**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
:
TAHIR HAMID,                                                      :
:
                Petitioner,                           :  No. 11 Civ. 00920 (DLC)(HBP)
:
        -v-                                               :
:
HABIB BANK LIMITED and                                           :
NATIONAL BANK OF PAKISTAN,                                       :
:
              Respondents.                             :
-----------------------------------------------------------------x


**MEMORANDUM OF LAW OF RESPONDENT HABIB BANK LIMITED IN**
**<u>RESPONSE TO ORDER TO SHOW CAUSE DATED APRIL 28, 2011</u>**

Danforth Newcomb
Brian H. Polovoy
Terence P. Gilroy
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022-6069
Telephone: (212) 848-4000

*Counsel for Respondent Habib Bank Limited*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ............................................................................................3

      A.     The Parties ............................................................................... 3

      B.     Shaheen Sports, Inc. And Tajmahal Sports Company Obtain The
            Underlying Judgment ................................................................... 4

      C.     Hamid Seeks To Enforce That Judgment .................................... 5

      D.     HBL Responds To Hamid's Petition,
            But Hamid Nonetheless Moves For A Default Judgment ......................... 6

      E.     Asia Insurance Sues HBL In Pakistan, and Shaheen Seeks to Enforce
            The Same Judgment That Hamid Claims Is His .......................................7

ARGUMENT ..................................................................................................................8

   I.     THE COURT SHOULD DENY HAMID'S MOTION FOR ENTRY OF A
        DEFAULT JUDGMENT ......................................................................... 8

      A.     HBL Acted In Good Faith And Any Purported Default Was Not
            Willful ...................................................................................... 9

      B.     Hamid Will Not Be Prejudiced If He Is Required To Litigate On The
            Merits ................................................................................... 11

      C.     HBL Has Meritorious Defenses To The Turnover Petition...................... 12

   II.    THE COURT SHOULD DENY HAMID'S MOTION FOR ENTRY OF AN
        ORDER GRANTING HAMID'S PETITION AND PROVIDING OTHER
        RELIEF ................................................................................................ 12

      A.     It Is Premature To Consider The Petition On The Merits Before
            Addressing Whether Hamid Has Standing and Whether He Properly
            Served The Judgment Debtor..................................................... 13

      B.     The Motion Should Be Denied Because HBL's New York Branch
            Does Not Possess Any Assets In Which Asia Insurance Has An
            Interest.................................................................................... 15

CONCLUSION..............................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72 (E.D.N.Y. 2010) ........................9, 11

*Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70 (2d Cir. 1010) ...........................21

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996)...................9, 10, 12

*Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41 (E.D.N.Y. 2002)............................12

*Automation Research Partners, L.P. v. Bedinghaus Bus. Comm.*,
    No. 93 Civ. 0186 (JSM), 1996 WL 544192 (S.D.N.Y. Sept. 24, 1996)...........................13

*BDP Int'l v. First Affiliated*,
    2006 WL 4682141 (Sup. Ct. N.Y. County Apr. 10, 2006)........................................16, 17

*Bergdorf Goodman, Inc. v. Marine Midland Bank*,
    411 N.Y.S.2d 490 (N.Y. Civ. Ct. 1978)................................................................15

*Cala Rosa Marine Co. v. Sucres Et Deneres Grp.*, 613 F. Supp. 2d 426 (S.D.N.Y 2009)............26

*Carver v. City of New York*, 621 F.3d 221 (2d Cir. 2010) ............................................13

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir. 1994) ..................9

*Cronan v. Schilling*, 100 N.Y.S.2d 474 (Sup. Ct. N.Y. County 1950), *aff'd*,
    126 N.Y.S.2d 192 (1st Dept. 1953) .................................................................15

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) .........................................................11

*Digitrex, Inc. v. Johnson*, 491 F. Supp. 66 (S.D.N.Y. 1980)...................................16, 17

*Eitzen Bulk A/S v. State Bank of India*,
    No. 09 Civ. 10118 (AKH), Dkt. No. 28 (S.D.N.Y. Aug. 3, 2010) ..................................22

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ......................................9, 12

*Fidelity Partners, Inc. v. Philippine  Export & Foreign Loan Guarantee Corp.*,
    921 F. Supp. 1113 (S.D.N.Y. 1996)..................................................................15, 16

*Franco v. Ideal Mortg. Bankers, Ltd.*, 2010 WL 3780972 (E.D.N.Y. Aug. 23, 2010) ..................9

*Gutekunst v. Cont'l Ins. Co.*, 486 F.2d 194 (2d Cir. 1973) .........................................21

*Hendricks v. New York Bd. of Educ.*,
    No. 98 Civ. 4279, 1998 WL 898122 (S.D.N.Y. Dec. 23, 1998).........................................11

*Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303 (2010).........................................................20

*JPMorgan Chase Bank, N.A. v. Motorola, Inc.*, 846 N.Y.S.2d 171 (1st Dep't 2007) .................23

*JW Oilfield Equip., LLC v. Commerzbank AG*,
    No. 18 MS 0302, 2011 WL 507266 (S.D.N.Y. Jan. 14, 2011).............................21, 22, 23

*John Wiley & Sons, Inc. v. Kirtsaeng*,
    No. 08 Civ. 7834, 2009 WL 3003242 (S.D.N.Y. Sept. 15, 2009)...............................16, 21

*Koehler v. Bank of Bermuda Ltd.*, 2005 WL 551115 (S.D.N.Y. Mar. 9, 2005) ...........................17

*Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009) .................................................. *passim*

*Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497 (2d Cir. 2009) ....................................................17

*Levin v. Bank of New York*,
    No. 09 Civ. 5900 (RPP), 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011)........................20, 21

*Lok Prakashan Ltd. v. India Abroad Publ'ns, Inc.*,
    No. 00 Civ. 5862 (LAP), 2002 WL 1585820 (S.D.N.Y. July 16, 2002) ..........................15

*Meehan v. Snow*, 652 F.2d 274 (2d Cir. 1981) ..............................................................................9

*Mones v. Nat'l Bank of Kuwait, S.A.K.*,
    No. M 18-32, 2004 WL 594855 (S.D.N.Y. Mar. 24, 2004) .............................................16

*Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558 (S.D.N.Y. 2003)...........................15, 16, 22

*Nat'l Union Fire Ins. Co. v. Adv. Emp't Concepts, Inc.*,
    703 N.Y.S.2d 3 (1st Dep't 2000)...............................................................................16, 17

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005) ..................................................................8, 9, 12

*Oil City Petroleum Co. v. Fabac Realty Corp.*, 418 N.Y.S.2d 51 (1st Dep't 1979), *aff'd*,
    50 N.Y.2d 853 (1980) .......................................................................................................14

*Parbulk II AS v. Heritage Maritime SA*,
    No. 651285/11 (Sup. Ct. N.Y. County June 7, 2011)...........................................20, 21, 22

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ..............................................................................9

*Samsun Logix Corp. v. Bank of China*,
2011 WL 1844061 (Sup. Ct. N.Y. County May 12, 2011).........................................*passim*

*Shaheen Sports, Inc., et al. v. Asia Ins. Co., Ltd.*, No. 98 Civ. 0591 (RLC)....................................4

*Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58 (2d Cir. 2009) ...............25, 26

*Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451 (S.D.N.Y. 2007)...............11

*W. Union Tel. Co. v. Pennsylvania*, 368 U.S. 71 (1961) ................................................................23

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002)...........................................25, 26

**STATUTES**

Fed. R. Civ. P. 55(a) ......................................................................................................................7, 8

Fed. R. Civ. P. 55(c) ..........................................................................................................................9

S.D.N.Y. Local Civil Rule 55.1 .........................................................................................................7

S.D.N.Y. Local Civil Rule 55.2(b) ....................................................................................................8

C.P.L.R. § 5225(b)...........................................................................................................................14

N.Y. U.C.C. §§ 4A-105(a); 4A-502(d)............................................................................................16

Pakistani Foreign Judgment Enforcement: Civil Procedure Code of 1908 Section 44-A ..............23

Respondent Habib Bank Limited ("HBL") respectfully submits this memorandum of law in response to the Court's April 28, 2011 Order directing HBL to show cause why the Court should not enter a default judgment and grant other relief.

## PRELIMINARY STATEMENT

HBL is Pakistan's largest private sector bank, and it is a well-regarded member of the international banking community.  Just over three months ago, petitioner Tahir Hamid served the New York branch of HBL with a restraining notice, subpoena, and petition seeking the turnover of any assets in which Asia Insurance Company, Ltd. ("Asia Insurance"), a non-party judgment debtor, had an interest.

As the Court is no doubt aware, New York branches of foreign banks receive countless restraining notices and subpoenas from judgment creditors who believe (or hope) that a judgment debtor has an account at the bank.  Quite often, a judgment creditor will serve restraining notices and subpoenas on numerous banks on the chance that one of them will actually yield assets.  It is common practice in this District that, where a bank branch receiving such process does not possess any assets in which the judgment debtor has an interest, it simply writes a letter to the judgment creditor's counsel confirming that fact – and the judgment creditor's counsel does not put the bank through the trouble and expense of formally responding to the subpoena, interrogatories, or other process.

Here, following this common practice, counsel for HBL's New York branch promptly sent a letter to Hamid's counsel informing him that the New York branch did not possess any property in which the judgment debtor had an interest, and that the branch was not authorized to accept process with respect to any other branch.  HBL's counsel invited Hamid's

counsel to call him if he had any questions, and specifically requested that Hamid's counsel send all correspondence in the matter to him.

HBL's counsel heard nothing further from Hamid's counsel.  Instead, with no notice to HBL's counsel, Hamid's counsel sent a letter to the Court *ex parte* stating that HBL had "refused to appear and/or file an objection" and that Hamid would therefore be moving for default.  Not surprisingly, the Court issued the instant Order to Show Cause as to why a default judgment should not be entered against HBL.  Only then did HBL's counsel learn of Hamid's *ex parte* letter and learn that, despite HBL's having responded, Hamid was seeking the entry of a default judgment.

As discussed below, Hamid's motion should be denied.  First, there is no basis for the entry of a default judgment.  HBL has now filed its Answer to the Petition.  Moreover, the Clerk of the Court has not entered HBL's default on the docket (a prerequisite to any motion for entry of a default judgment) and, even if it had, there is good cause as to why this action should be determined on the merits.  HBL's initial failure to respond to the Petition formally (as opposed to informally) was not willful, Hamid has suffered no prejudice, and HBL has meritorious defenses to the Petition.  Second, there is no basis for the entry of the order that Hamid requests in addition to a default judgment (namely, an order (1) directing HBL to comply with Hamid's Subpoena; (2) directing HBL to comply with Hamid's restraining notice; and (3) granting Hamid's petition on the merits and directing the turnover of assets).  HBL has now formally served written responses and objections to the subpoena, and the Court has issued a restraining order, meaning those portions of the requested relief are moot.  The remaining relief he requests – an order granting his Petition – is premature and, as demonstrated below, the Court should dismiss the Petition for failing to make out a *prima facie* case for a turnover.  It is

premature because there is no evidence that Hamid has standing to bring this proceeding or that he complied with the CPLR's requirement that he timely serve the judgment debtor. It should be dismissed in any event because it does not – and cannot – allege that HBL's New York branch possesses any property in which Asia Insurance has an interest. Under the "separate entity" rule – which remains good law – it is irrelevant whether an HBL branch in Pakistan may have an account in which Asia Insurance has an interest. The New York Court of Appeals' decision in *Koehler v. Bank of Bermuda* did not mention, much less abrogate, this rule. Indeed, recent decisions have explicitly held that the rule remains in full force even in the post-judgment context. Absent evidence that HBL's New York branch possesses such property, the Petition should be dismissed.

HBL has no interest in this action other than minimizing its costs and avoiding multiple liabilities on the same claim (where Hamid, the judgment creditors, and Asia Insurance may all claim the same asset). Asia Insurance has filed a lawsuit against HBL in Pakistan and asked a court there to direct HBL to pay over to Asia Insurance funds in Pakistan that HBL froze in response to this Court's restraining order; and one of the judgment creditors claims in a matter before Chief Judge Preska that it (not Hamid) is entitled to collect on this judgment. This puts HBL in the untenable – and unfair – position of facing conflicting court orders and multiple liabilities. Because Hamid's Petition is fatally flawed, it should be dismissed now.

## STATEMENT OF FACTS

A.      The Parties

Petitioner Tahir Hamid is a resident of Texas. (Affidavit of Terence P. Gilroy, sworn to June 24, 2011 ("Gilroy Aff.") Ex. A, Petition ("Pet.") ¶ 5.) Hamid alleges that he, individually, is the "successor in interest" to Shaheen Sports, Inc. ("Shaheen") and Tajmahal Sports Company ("Tajmahal"). (*Id.* Pet. ¶ 6.) Hamid seeks to execute on a judgment that

Shaheen and Tajmahal (a Pakistani concern) obtained against Asia Insurance, another Pakistani company, in 2003.  Hamid's Petition does not explain how he is the "successor in interest" to Shaheen or Tajmahal, or how he has standing to seek to enforce their judgment against Asia Insurance.

Respondent HBL is a financial institution organized under the laws of Pakistan, with its headquarters and main office in Karachi, Pakistan.  HBL is the largest private sector bank in Pakistan, with over 1,400 branches and operations in numerous countries.  The New York branch of HBL, which is located at 60 East 42nd Street, has operated in New York for approximately 40 years.  (Declaration of Muhammad Akram, dated June 24, 2011 ("Akram Dec.") ¶ 2.)

B.       Shaheen Sports, Inc. And Tajmahal Sports Company Obtain The Underlying Judgment

Shaheen and Tajmahal filed suit against Asia Insurance in August 1998. (*Shaheen Sports, Inc., et al. v. Asia Ins. Co., Ltd.*, No. 98 Civ. 0591 (RLC) ("Shaheen Action").) Tajmahal alleged that Asia Insurance had wrongfully failed to pay Tajmahal's claim on certain marine insurance policies that Tajmahal had purchased from Asia Insurance; Shaheen claimed it was the third party beneficiary of those insurance policies.  (Ex. A to Gilroy Aff. Ex. D, Am. Compl.)

On March 26, 2003, the Clerk of the Court entered judgment in favor of Shaheen and Tajmahal in the amount of $369,423.91 against Asia Insurance.  (Gilroy Aff. Ex. A, Pet. ¶ 6, Ex. 1.)  Hamid's Petition alleges that Asia Insurance has not satisfied the judgment, and that, with post-judgment interest, the amount sought currently stands at $442,583.40.  (Gilroy Aff. Ex. A, Pet. *ad damnum* ¶ b.)  Hamid subsequently advised the Court that he had incorrectly calculated the post-judgment interest, and that the correct amount sought is $411,891.27.  (Gilroy Aff. Ex. C, Tr. at 14.)

C.      Hamid Seeks To Enforce That Judgment

Three months after Shaheen and Tajmahal obtained their judgment against Asia Insurance, Shaheen Sports, Inc. dissolved; it ceased to exist on June 25, 2003.  (Gilroy Aff. Ex. B.)  The other judgment creditor, Tajmahal, remains a going concern in Pakistan.  *See* www.tajmahalpk.com.

Eight years later, Hamid filed this action.  On February 28, 2011, Hamid served the New York branch of HBL with his Petition, Summons and Subpoena and Restraining Notice to Garnishee.  (*Id.* Ex. F.)  In short, Hamid's Petition alleges that (i) Hamid is the "successor in interest" to both Tajmahal and Shaheen; (ii) the judgment remains unpaid, and (iii) "upon information and belief," assets of Asia Insurance are "within the possession of" a Karachi, Pakistan office of HBL.  (*Id.* Ex. A, Pet. ¶¶ 6, 14, 19.)  Notably, the Petition does not allege that any assets of Asia Insurance are in the possession of the New York branch of HBL.[1]

While the judgment was plainly entered in favor of Shaheen and Tajmahal – and not Hamid – Hamid attempts to obscure this point in his Petition by re-defining his own name.  (*Id.* Ex. A, Pet. ¶ 6 ("the successors in interest and Tahir Hamid are, hereinafter, collectively referred to as 'Tahir Hamid'".)  We assume his counsel was attempting to define "Tahir Hamid" to include Mr. Hamid *and* the two entities, Shaheen and Tajmahal.  But as there are no other alleged "successors in interest," this defined term is meaningless.

---

[1]      In contrast to Hamid's Petition, which alleges that HBL possesses assets of Asia Insurance in its offices in *Karachi* (Gilroy Aff. Ex. A, Pet. ¶ 19), Hamid's brief alleges that HBL possesses assets of Asia Insurance in its "*Lahore*, Pakistan offices and/or other offices located in Pakistan" (Pet.'s Mem. at 2 (emphasis added).)

D.      HBL Responds To Hamid's Petition,
        But Hamid Nonetheless Moves For A Default Judgment

        Less than three weeks after HBL's New York branch was served, its counsel responded to Hamid's petition and subpoena.  In his letter dated March 18, 2011 to Hamid's counsel, counsel for HBL's New York branch, Mumtaz Alvi, stated that the New York branch was "not in possession or custody of any property . . . in which Asia Insurance . . . has an interest" and advised that the New York branch was not authorized to receive legal notices on behalf of any other offices or branches of HBL.  (Gilroy Aff. Ex. G.)  Mr. Alvi's letter invited Hamid's counsel to contact him if he had any questions.  Critically, Mr. Alvi's letter requested that, going forward, Hamid's counsel send all correspondence regarding the matter to Mr. Alvi. (*Id.*)

        Even though counsel for HBL had responded to the Petition, Hamid's counsel, Frederick A. Lovejoy, wrote to the Court on April 19, 2011, and told the Court that HBL had "refused to appear and/or file an objection," and that Hamid would shortly file a "Motion for Default."  (Gilroy Aff. Ex. H.)  Mr. Lovejoy failed to send to HBL's counsel a copy of his letter to the Court, so HBL's counsel did not have the opportunity to respond to Mr. Lovejoy's letter and his threat of seeking a default.  (*Id.* Ex. K, Aff. of Mumtaz Alvi dated May 17, 2011 ("Alvi Aff.") ¶ 5.)  Moreover, Mr. Lovejoy's letter to the Court did not advise the Court that HBL's New York branch had, in fact, written to him in response to the subpoena.  (Gilroy Aff. Ex. H.) (Mr. Lovejoy compounded this omission by incorrectly stating in his 28 U.S.C. § 1746 statement in support of his motion that HBL "ha[d] not responded to the Subpoenas and Restraining Notices."  (*Id.* Ex. J ¶ 18.))

        The Court memo-endorsed Mr. Lovejoy's *ex parte* letter, directing that an order to show cause be presented to Chambers by April 29, 2011.  (Gilroy Aff. Ex. H.)  That day, the

Court issued the order to show cause setting the hearing for May 20, 2011, with opposition

papers due May 16, 2011.  (*Id.* Ex. I.)  Counsel for HBL received the order to show cause on

May 2; indeed, this was the first time HBL's counsel had heard from Hamid's attorney since he

had written to Mr. Lovejoy on March 18 advising him that the New York branch of HBL did not

possess any assets in which Asia Insurance had an interest.  (*Id.* Ex. K, Alvi Aff. ¶ 5.)

        In accordance with the schedule in the order to show cause, Mr. Alvi served and

filed a responsive affirmation, and requested a further extension of time to respond to Hamid's

memorandum of law.  (Gilroy Aff. Exs. K, L.)  On May 20, 2011, Mr. Alvi appeared at the show

cause hearing, and the Court granted the requested extension in part.  Undersigned counsel were

retained on June 7, 2011, and, by order dated June 13, 2011, the Court further extended HBL's

time to respond to Hamid's motion until June 24, 2011.  On June 24, 2011, HBL filed and served

its Answer and this response, and it served formal written responses and objections to Hamid's

Subpoena (even though HBL had already responded to the Subpoena through its counsel's

March 18 letter).  (Gilroy Aff. Ex. O, Ex. P.)

        Hamid has not obtained a certificate of default by the clerk pursuant to Rule 55(a)

of the Federal Rules of Civil Procedure or Rule 55.1 of this Court's Local Civil Rules, and the

clerk has not entered a default.

E.     Asia Insurance Sues HBL In Pakistan,
       <u>and Shaheen Seeks To Enforce The Same Judgment That Hamid Claims Is His</u>

        Contrary to Hamid's speculation that HBL, Pakistan's largest private sector bank,

has "colluded" with Asia Insurance [Dkt. No. 25 at 4], Asia Insurance recently filed a lawsuit

against HBL in Pakistan seeking a declaration that HBL be permanently and temporarily

restrained from alienating the assets of Asia Insurance.  (Akram Dec. ¶ 3.)  There has been no

ruling to date on Asia Insurance's request for relief.  (*Id.* ¶ 4.)

Moreover, while Hamid's attorney has averred in this case that the Shaheen Action judgment "remains due and owing to *Tahir Hamid*" (Dkt. No. 3 at ¶ 6 (emphasis added)), Hamid's attorney, who also represents Shaheen and Tajmahal, recently wrote to Chief Judge Preska *ex parte* and asked that she re-open the Shaheen Action so that *Shaheen itself* "might attempt to satisfy the judgment that it obtained."  (Gilroy Aff. Ex. Q.)

## ARGUMENT

## I.  THE COURT SHOULD DENY HAMID'S MOTION FOR ENTRY OF A DEFAULT JUDGMENT

At the threshold, Hamid's motion for entry of a default judgment should be denied because the Clerk has not entered a default against HBL.  Under settled law, "Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment.  The first step is to obtain a default [from the Clerk of the Court] under Rule 55(a). *Having obtained a default*, a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (emphasis added).  Thus, a plaintiff may not seek or obtain entry of a default judgment for a failure to answer until it has "obtained a default" under Rule 55(a).  This point is made clear in Local Civil Rule 55.2(b) and this Court's Individual Practices, both of which require a party seeking a default judgment to attach to the application the clerk's certificate of default.  Here, the docket does not reflect the entry of a default by the clerk, and, as noted above, HBL has filed its Answer to the Petition.  Accordingly, Hamid's motion for entry of a default judgment must be denied.[2]

---

[2]    This is no mere technicality.  In order to obtain a certificate of default, Hamid's counsel would have been required to file an affidavit showing, *inter alia*, that there had been "no response" to his pleading and that HBL had neither pleaded nor "otherwise defend[ed] the action."  Local Civil Rule 55.1.  Because Mr. Alvi's March 18, 2011 letter to Mr. Lovejoy was plainly a "response," Mr. Lovejoy would not have been able to swear that affidavit.

Even if a default had been entered, the Court "may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  "When deciding a motion for a default judgment, 'the Second Circuit has observed [that] the Court is guided by the same factors which apply to a motion to set aside entry of a default.'"  *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 76 (E.D.N.Y. 2010) (quoting *Franco v. Ideal Mortg. Bankers, Ltd.*, 2010 WL 3780972, at * 2 (E.D.N.Y. Aug. 23, 2010)) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).

Those factors are:  "[1] whether the default was willful, [2] whether setting it aside [or declining to enter it] would prejudice the adversary, [3] whether a meritorious defense is presented."  *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994).  The court "must consider all of these factors" (*id.*), but none is dispositive.  If there is any doubt, the question "must be resolved in favor" of the defaulting party.  *Green*, 420 F.3d at 104; *see also Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort").

### A.   HBL Acted In Good Faith And Any Purported Default Was Not Willful

There is not a speck of evidence that HBL has acted in bad faith or willfully defaulted.  Under settled law, "'willfulness,' in the context of a default, [] refer[s] to conduct that is more than merely negligent or careless."  *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  A finding of willfulness is only "appropriate where there is evidence of bad faith or the default arose from egregious or deliberate conduct."  *Addison*, 272 F.R.D. at 77 (internal quotations and citations omitted); *see Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996).

Not once during this proceeding has HBL failed to respond to service or appear at a scheduled hearing.  HBL's New York branch was served on February 28, 2011.  On March 18, 2011 – well within the 21 day period in which a response was required – counsel for HBL's New York branch informed Hamid's counsel in writing that HBL's New York branch was not in

9

possession or custody of any property in which Asia Insurance had an interest, and that HBL's New York branch was not authorized to accept service on behalf of any other HBL branch or HBL's head office in Karachi, Pakistan.  (Gilroy Aff. Ex. G.)  Counsel's letter invited Mr. Lovejoy to "contact [HBL's counsel] with any question that [Hamid's counsel might] have."  (*Id.*)  HBL believed in good faith that it had timely met its obligations – albeit in the informal manner that is common practice in this District for responding to restraining notices and subpoenas.

Instead of responding to HBL's letter, Mr. Lovejoy sent a letter to the Court *ex parte* in which he represented that HBL "refused to appear and/or file an objection" to Hamid's Petition.  (Gilroy Aff. Ex. H.)  Hamid's counsel did not inform the Court that counsel for HBL's New York branch had informed him that HBL's New York branch was not in possession of Asia Insurance's assets and had offered to discuss the issue further.  Hamid's counsel's subsequent representation to the Court that HBL had "not responded" was simply inaccurate.  (Gilroy Aff. Ex. J ¶ 18.)

HBL filed a timely response to the order to show cause and requested an extension of time to respond further to the order.  (Gilroy Aff. Ex. K, Alvi Aff.)  HBL is now responding to the order to show cause within the time set by the Court.  HBL's purported default in this proceeding is not because of "egregious" or "deliberate" conduct.  Rather, at all times, HBL believed it had responded to Hamid's process, albeit informally.  HBL's error in this proceeding was that it responded to Hamid's Subpoena and Petition by letter, rather than by filing a formal answer in accordance with the Federal Rules.  HBL regrets its error.  But especially in these circumstances, this cannot warrant a default judgment.  *See Hendricks v. New*

10

*York Bd. of Educ.*, No. 98 Civ. 4279, 1998 WL 898122, at * 2 (S.D.N.Y. Dec. 23, 1998) (finding

three procedural errors supported a finding of carelessness, and not willful default).

> **B.      Hamid Will Not Be Prejudiced If He Is Required To Litigate On The Merits**

This is a case about Hamid's right to enforce a money judgment, and Hamid will

suffer no cognizable prejudice from having this matter determined on the merits.  Here, the only

mention of prejudice in Hamid's filings was the conclusory assertion in his reply brief that

"additional delay will *most likely* cause [him] further prejudice."  (Pet.'s Reply Mem. at 3

(emphasis added).)  In his June 9, 2011, letter to the Court, Hamid's counsel added that "Hamid

has suffered financially since Asia Insurance Company Ltd. failed to pay his claim in 1998 [and

he] suffers from medical issues.  As such, any further delay will prejudice Mr. Hamid as he has

yet to be made whole."  (Gilroy Aff. Ex. E at 2.)  Under settled law, Hamid cannot rely on delay

to show prejudice because "delay alone is not a sufficient basis for establishing prejudice."

*Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 455 (S.D.N.Y. 2007)

(internal quotations and citations omitted).  "Rather it must be shown that delay will result in the

loss of evidence, create increased difficulties of discovery, or provide greater opportunity for

fraud and collusion."  *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotations and

citations omitted).  None of these circumstances are present here.

Hamid also alleges that "there exists a question of whether [HBL has] not already

colluded with [Asia Insurance] to deprive [Hamid] of perfecting his judgment."  Of course,

Hamid does not – and cannot – provide support for this baseless allegation because, as noted

above, Asia Insurance has sued HBL because HBL froze assets in Pakistan.  "[S]peculative

prejudice" will not outweigh the other factors and establish grounds for entry of default.

*Addison*, 272 F.R.D. at 82.  Hamid must point to specific bad faith or deceitful conduct to

support a finding or prejudice, and here there is none whatsoever.  Hamid's suggestion that there

would be no money to satisfy a judgment because of some unarticulated "collusion" is nonsense: while Hamid's claim is meritless, HBL, a well-established financial institution, has more than enough funds at its New York branch to satisfy a judgment.

      C.      **HBL Has Meritorious Defenses To The Turnover Petition**

The Second Circuit has a "strong preference" to resolve matters on the merits, *Green*, 420 F.3d at 104, and therefore a "potentially viable" defense is sufficient to defeat the entry of default even if a party willfully defaulted, *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 44-45 (E.D.N.Y. 2002) (denying plaintiff's motion for default even though the default was willful because the defendant had a colorable statute of limitations defense).

To demonstrate a meritorious defense, a respondent does not need to show a likelihood of success on the merits. *See Enron*, 10 F.3d at 98. Instead a "defense is meritorious if it is good at law so as to give the factfinder some determination to make," *Am. Alliance Ins. Co.*, 92 F.3d at 61 (internal quotation and citation omitted), and a respondent need only "present some evidence beyond conclusory denials to support [the] defense." *Enron*, 10 F.3d at 98. Obviously, where a claim fails as a matter of law, that constitutes a "meritorious defense" under any standard.

As set forth below, HBL has meritorious defenses to Hamid's Petition. Indeed, while the standard to avoid entry of default is low, HBL's defenses are such that the Petition should be dismissed even at this threshold stage.

II.      **THE COURT SHOULD DENY HAMID'S MOTION FOR ENTRY OF AN ORDER GRANTING HAMID'S PETITION AND PROVIDING OTHER RELIEF**

In addition to seeking the entry of a default judgment, Hamid's motion seeks an order (1) directing HBL to "comply" with Hamid's Subpoena; (2) directing HBL to "comply" with Hamid's restraining notice; and (3) granting Hamid's petition on the merits and directing

the turnover of assets.  These requests should be denied:  The first two are moot because HBL

has now served formal responses and objections to the Subpoena (Gilroy Aff. Ex. P), and the

Court has since issued an order directing HBL to restrain certain property (*id.* Ex. M).  The last

request – that the Court grant his Petition on the merits – is premature and, indeed, the Court

should dismiss the petition for failing to make out a *prima facie* case for a turnover order.

    **A.**    **It Is Premature To Consider The Petition On The Merits Before Addressing Whether Hamid Has Standing and Whether He Properly Served The Judgment Debtor**

        Until the threshold issue of standing is addressed, the Court need not, and should

not, address the legal issue of whether HBL can be compelled to turn over assets in which a

customer has an interest that are not in the possession of the New York branch.  Under settled

law, questions of whether a plaintiff has standing to assert a claim must be determined before the

Court determines the merits of the plaintiff's claim.  *See Carver v. City of New York*, 621 F.3d

221, 225 (2d Cir. 2010) ("[A] plaintiff must demonstrate standing for each claim and form of

relief sought." (internal quotation and citation omitted)).  Here, Hamid makes a conclusory

allegation that he is the "successor in interest" to Shaheen and Tajmahal, the judgment creditors

on the underlying judgment.  (Gilroy Aff. Ex. A., Pet. ¶ 6.)  As noted above, however, Shaheen

was dissolved by proclamation and ceased to exist on June 25, 2003.  (*Id.* Ex. B.)  Once a

company is dissolved and ceases to exist, it "cannot have a successor in interest at this time."

*Automation Research Partners, L.P. v. Bedinghaus Bus. Comm.*, No. 93 Civ. 0186 (JSM), 1996

WL 544192, *1 (S.D.N.Y. Sept. 24, 1996).  There is similarly no evidence in the record

supporting Hamid's assertion that he is the "successor in interest" to Tajmahal, which appears to

remain a going concern in Pakistan.  *See* www.tajmahalpk.com.  This is a key threshold issue

because absent a determination that Hamid is, as a matter of law, the successor in interest, he has

no standing to pursue this matter.  This is particularly important in a turnover proceeding because

the actual judgment creditors would still argue that they have the right to seek to enforce their judgment.  Indeed, here, at the same time that Hamid is seeking turnover of assets to satisfy the judgment that Shaheen and Tajmahal obtained in the Shaheen Action, Hamid's attorney, who also represents Shaheen, has asked Chief Judge Preska *ex parte* to re-open the Shaheen Action so that Shaheen itself can seek to execute on its judgment.  (Gilroy Aff. Ex. Q.)[3]

    Nor is there any evidence in the record that Hamid timely served the judgment debtor as required under Article 52 of the C.P.L.R.  This is an action under Sections 5225(b) and 5227 of the C.P.L.R.  In order to proceed under either of those sections, "[n]otice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested."  C.P.L.R. § 5225(b).  Such service must be made within 120 days of the filing of the petition.  C.P.L.R. § 306-b.  Hamid's Petition was filed on February 9, 2009, more than 120 days ago, yet there is no affidavit of service on file stating that service on the judgment debtor was made during the required period.  If, in fact, Hamid did not properly serve Asia Insurance within the requisite 120-day period, that alone is grounds for dismissal of his Petition.  *See Oil City Petroleum Co. v. Fabac Realty Corp.*, 418 N.Y.S.2d 51, 52 (1st Dep't 1979), *aff'd*, 50 N.Y.2d 853 (1980) (dismissing petition where judgment debtor was not properly served with notice of the proceedings because "[t]he failure to effect such service is not a mere procedural irregularity but rather renders the proceeding jurisdictionally defective"); *Samsun Logix Corp. v. Bank of China*, 2011 WL 1844061, at **7-8 (Sup. Ct. N.Y. County May 12, 2011); *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 411

---

[3]   We wrote to Mr. Lovejoy on June 15 and June 20 and asked that he explain how Mr. Hamid is the successor in interest to Shaheen and Tajmahal.  We have not received a response.  (Gilroy Aff. Ex. R.)

N.Y.S.2d 490, 491 (N.Y. Civ. Ct. 1978) ("There must be strict compliance with the provisions

for service upon the judgment debtor" and "improper notice to the judgment debtor alone would

be sufficient ground to dismiss the petition.").[4]

### B.   The Motion Should Be Denied Because HBL's New York Branch Does Not Possess Any Assets In Which Asia Insurance Has An Interest

Putting aside whether Hamid has standing to seek to enforce a judgment entered

in favor of others, especially where there is no evidence his Petition was timely served on the

judgment debtor, the Petition should be dismissed because the Petition seeks the turnover of

assets in Pakistan – and there is no allegation that the New York branch possesses any assets in

which Asia Insurance holds an interest.  (Gilroy Aff. Ex. A, Pet. ¶ 19.)

Under settled law, the "separate entity" rule provides that "'each branch of bank is

treated as a separate entity . . . in no way concerned with accounts maintained by depositors in

other branches or at the home office.'"  *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558,

560 (S.D.N.Y. 2003) (quoting *Lok Prakashan Ltd. v. India Abroad Publ'ns, Inc.*, No. 00 Civ.

5862 (LAP), 2002 WL 1585820 (S.D.N.Y. July 16, 2002) ("New York follows the 'separate

entity rule' for purposes of attachment and execution")); *see also Cronan v. Schilling*, 100

N.Y.S.2d 474, 476 (Sup. Ct. N.Y. County 1950), *aff'd*, 126 N.Y.S.2d 192 (1st Dep't 1953).  New

York courts long held that a judgment creditor cannot enforce a judgment against accounts of a

judgment debtor that are located at a bank outside of the U.S. by serving process on the New

York branch of the bank.  *See Motorola Credit, supra; Fidelity Partners, Inc. v. Philippine

Export & Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113, 1120 (S.D.N.Y. 1996); *Nat'l*

---

[4]     Here, again, we wrote to Mr. Lovejoy on June 15 and June 20 and asked if he had served a copy
of Hamid's petition in this matter on judgment debtor Asia Insurance Company, Ltd. and, if
so, when it was served and whether he intended to file an affidavit of service.  We did not receive
a response.  (Gilroy Aff. Ex. R.)

*Union Fire Ins. Co. v. Adv. Emp't Concepts, Inc.*, 703 N.Y.S.2d 3, 4 (1st Dep't 2000); *BDP Int'l v. First Affiliated*, 2006 WL 4682141 (Sup. Ct. N.Y. County Apr. 10, 2006); *cf. Mones v. Nat'l Bank of Kuwait, S.A.K.*, No. M 18-32, 2004 WL 594855, at *1 (S.D.N.Y. Mar. 24, 2004). Therefore, assets can only be garnished by process served on the branch that holds such assets for the judgment debtor.  *See Motorola Credit, supra; Nat'l Union, supra*.  Indeed, Judge Rakoff noted in *Motorola Credit* that the plaintiff had "not cited a single case in which a New York court has so extended the separate entity rule as to permit restraint of accounts held in a bank's foreign branches pursuant to a restraining order served on the bank's office in New York . . . ." 288 F. Supp. 2d at 561.  The separate entity rule is also recognized in the Article of the New York Commercial Code governing funds transfers (and creditor process), which states that "[a] branch or separate office of a bank is a separate bank for purposes of this Article."  N.Y. U.C.C. §§ 4A-105(a); 4A-502(d).

The question when applying the separate entity rule is the location of the assets sought.  Hamid does not – and cannot – allege that HBL's New York branch holds assets in which Asia Insurance holds an interest.  Therefore, under the separate entity rule, any account in which Asia Insurance might hold an interest outside New York cannot be made the subject of a turnover order through service on HBL's New York branch.[5]

---

[5]     The limited exception to the separate entity rule is not applicable here.  That exception only applies when "(1) the restraining notice is served on the bank's main office, (2) the bank's main office and branches are within the same jurisdiction, and (3) the bank branches are connected to the main office by high-speed computers and are under the centralized control of the main office."  *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242, at *4 (S.D.N.Y. Sept. 15, 2009); *see also Digitrex, Inc. v. Johnson*, 491 F. Supp. 66, 68-69 (S.D.N.Y. 1980).  Where, as here, the Petitioner serves the New York branch and *not* the main office, the main office and bank branch are not in the same jurisdiction, and there is no factual allegation of a centralized computer system, the separate entity rule applies – even when the New York branch and the foreign branch are the same legal entity.  *See Fidelity Partners*, 921 F. Supp. at 1120; *Nat'l Union*, 703 N.Y.S.2d at 4 (*Digitrex* applies only to those accounts at branches in same jurisdiction as the bank's main office).

Contrary to the argument in Hamid's brief, the separate entity rule was not abrogated by the New York Court of Appeal's decision in *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009), which answered a discrete question certified by the Second Circuit.  As an initial matter, *Koehler* did not even *mention* the separate entity rule, much less overrule it.  *See Samsun*, 2011 WL 1844061, at *3 ("the Court of Appeals in *Koehler* did not even mention the separate entity rule, thereby strongly indicating that it had not intended to overrule that doctrine"); *Nat'l Union*, 703 N.Y.S.2d at 4 (any exception to separate entity rule would require "a pronouncement from the Court of Appeals or an act of the Legislature"); *BDP Int'l*, 2006 WL 4682141, at 4 (same).  Indeed, the district court decision in *Koehler* explicitly noted that "the separate entity rule has *no role to play in this case,* [because] [h]ere, the foreign branch itself was properly served."  *Koehler v. Bank of Bermuda Ltd.*, 2005 WL 551115, at *12 (S.D.N.Y. Mar. 9, 2005) (emphasis added).  The Second Circuit similarly did not mention the separate entity rule, and explicitly noted that the turnover order was authorized "because" the specific foreign entity that held the stock certificates had "consented to the personal jurisdiction" of the court.  *Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497, 499 (2d Cir. 2009).

*Koehler* concerned the turnover of stock certificates belonging to the judgment debtor that were physically held by The Bank of Bermuda Limited in Bermuda.  12 N.Y.3d at 536.  The Second Circuit certified the following question to the New York Court of Appeals: "whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to CPLR Article 52, when those stock certificates are located outside New York."  *Id.*  In a 4-3 decision, the Court of Appeals answered the question in the affirmative.  *Id.* at 541.

The holding of *Koehler* is that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York." 12 N.Y.3d at 541.  In *Koehler*, Bank of Bermuda did not have a New York branch; it had a New York subsidiary.  Critically, the bank stipulated that the bank itself – the head office that held the shares, not just the New York subsidiary – was subject to the court's jurisdiction. Accordingly, *Koehler* involved a situation where the specific entity holding identified property consented to jurisdiction and was before the court.  What *Koehler* decided is that, because the New York court had jurisdiction over the foreign bank office that held the asset, it could order a turnover of the asset notwithstanding that it was physically out-of-state.

*Koehler* did not implicate the separate entity rule, because it did not deal with the situation where a petitioner was asserting that the court had jurisdiction to order a turnover of assets at the foreign bank simply because the petitioner had served its New York branch.  While this Court has personal jurisdiction over HBL by virtue of its New York branch, the separate entity rule provides that, for pre-judgment attachment and post-judgment execution purposes, the Court must treat the New York branch as a "separate entity" distinct from its Pakistan branches, and the Court only acquires jurisdiction to grant a turnover proceeding if the foreign branch holding the assets – as a "separate entity" – is itself separately subject to the Court's jurisdiction. Thus, even though the branches are part of the same legal entity, the Court lacks jurisdiction in this context to permit execution on assets held at a foreign branch when only the New York branch has been served.  Under *Koehler* it is now settled that when a New York court has jurisdiction over a garnishee holding an asset in which a judgment debtor has an interest, the court can direct the turnover of that asset even if it is located outside New York.  For sound policy reasons, however, the separate entity rule provides that *when the garnishee is a bank* (as

18

opposed to some other type of entity), the court must obtain jurisdiction over the specific branch

holding the asset before it can order a turnover of assets held at that branch – even where the

court has jurisdiction over the legal entity by virtue of a branch in New York.

At least two New York courts have explicitly stated that *Koehler* did not abrogate

the separate entity rule in a post-judgment turnover proceeding under CPLR 5225(b).  First, in a

case on all fours, *Samsun Logix Corp.*, 2011 WL 1844061, the New York court dismissed a

special proceeding seeking to have banks turn over any property of the judgment debtors in the

possession of the banks' branches located outside of New York state.  The court held that

*Koehler* did not affect the separate entity rule because in that case the foreign bank branch, based

in Bermuda, had *consented* to the court's jurisdiction after long and complex litigation over its

presence in New York.  *Id.* at *3.  The separate entity rule was not abrogated by *Koehler*,

because the rule was not at issue – the court's exercise of jurisdiction over the assets outside of

New York did not turn on the presence of a branch in New York.  *Id.* at *4.  As noted, the court

stated that "the Court of Appeals in *Koehler* did not even mention the separate entity rule,

thereby strongly indicating that it had not intended to overrule that doctrine."  *Id.*  The *Samsun*

court noted that other "post-*Koehler* decisions have affirmed the viability of the [separate entity]

doctrine."  *Id.* (citing cases).  Thus, when a turnover petition does not identify any assets of the

judgment debtor located in the branch of the bank that was served with the turnover petition, but

instead seeks the turnover of assets held at a foreign branch that has not been served or otherwise

consented to jurisdiction, the petition should be dismissed.  *Id.*

The *Samsun* court further distinguished *Koehler* on the ground that Koehler

"sought the turnover of an identifiable asset – a stock certificate," while Samsun (like Hamid

here) sought the turnover of **any** property "that may be in the banks' possession, but located

19

outside New York State, and an order requiring the Banks to execute and deliver 'any document' necessary to effect payment or delivery of property of the Judgment Debtors to Samsun." The language in Hamid's petition is *identical* to the language of the requested relief in *Samsun*, which the court held would "extend the holding in *Koehler* to a different factual scenario," which sound policy concerns counseled against. *Compare Samsun*, 2011 WL 1844061, at *4 *with* Hamid Pet. at p. 7 ¶¶ b, c.

Second, two weeks ago, the New York Supreme Court again re-affirmed the continuing vitality of the separate entity in post-judgment execution proceedings. In *Parbulk II AS v. Heritage Maritime SA*, No. 651285/11, slip op. (Sup. Ct. N.Y. County June 7, 2011) (Gilroy Aff. Ex. S.), the court stated:

> Neither *Koehler* nor *Hotel 71* [*Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 312 (2010)] addressed the "separate entity" rule which states that "each branch of a bank is a separate entity, in no way concerned with the accounts maintained by depositors in other branches or at the home office." The situs of an account is fixed at the branch where the account is carried. This court-made rule [] does not involve any interpretation of either CPLR article 52 or CPLR article 62. The doctrine has been reaffirmed in court decisions rendered after *Koehler* in *both the pre-judgment and post-judgment contexts.*

*Id.* at 3-4 (internal citations omitted; emphasis added). Each of the banks there – New York branches of foreign banks – represented that it found no property of the judgment debtor in its New York branch. That was the end of the story: "Absent some evidence to support a need for further inquiry, the petition must be dismissed." *Id.* at 4.

This Court has similarly applied the separate entity rule in a post-judgment garnishment case post-*Koehler*. In *Levin v. Bank of New York*, No. 09 Civ. 5900 (RPP), 2011 WL 812032, at *12 (S.D.N.Y. Mar. 4, 2011), Judge Patterson held that the petitioner could not demonstrate an entitlement to a turnover order of assets in a bank's New York branch when the petitioner had served the writ of execution on the bank's Maryland branch. Judge Patterson's

opinion held that the separate entity rule applied to a post-judgment writ of execution against a bank branch; it did not mention *Koehler* (presumably because *Koehler* was irrelevant).  The Second Circuit and this Court have also reaffirmed the separate entity rule post-*Koehler* (albeit in the pre-judgment context).  *See Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 1010); *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242 (S.D.N.Y. Sept. 15, 2009) (adding that, "under New York commercial law, 'notice received by one branch of a bank does not [even] constitute constructive notice to any other branch of the same bank'" (quoting *Gutekunst v. Cont'l Ins. Co.*, 486 F.2d 194, 196 (2d Cir. 1973))).

Hamid's argument similarly finds no support in *JW Oilfield Equip., LLC v. Commerzbank AG*, No. 18 MS 0302, 2011 WL 507266 (S.D.N.Y. Jan. 14, 2011).  In *Commerzbank*, Judge Castel stated that "*Koehler* indicates that New York courts will not apply the separate entity rule in post-judgment execution proceedings."  2011 WL 5072666, at *6.  His support for this assertion was a citation to *Koehler* itself (which, as noted above, did not mention or concern the separate entity rule) and a citation to Commerzbank's brief (which he viewed as *conceding* that *Koehler* "effectively preempts application of the separate entity rule here").  *Id.*

The New York courts have since explicitly disagreed with Judge Castel's statement as to what *Koehler* "indicates."  In *Parbulk II AS*, the New York court stated "[t]his court disagrees [with the *Commerzbank* court]."  The *Parbulk* court explained why:

> The question certified to the New York Court of Appeals by the United States Court of Appeals for the Second Circuit did not involve the separate entity rule and the New York Court of Appeals did not address it despite the fact that in its amicus curiae brief to that court, the Clearing House Association, LLC raised the issue, arguing that the court should not answer the certified question in a manner that conflicts with the separate entity rule (see *Koehler*, 12NY3d at 535 [Points of Counsel]).  Until the appellate courts in New York hold otherwise, this court is constrained to decline the invitation to ignore established precedent applying the separate entity rule.

*Parbulk II AS*, slip op. at 4 n.1 (emphasis added).  The New York courts have also found

unpersuasive a similarly conclusory statement in Judge Hellerstein's unpublished order in *Eitzen*

*Bulk A/S v. State Bank of India*, No. 09 Civ. 10118 (AKH), Dkt. No. 28, slip op. at 6-7 (S.D.N.Y.

Aug. 3, 2010) (Gilroy Aff. Ex. T.).  There, similarly, the court cited only to *Koehler* to conclude

that *Koehler* abolished the separate entity rule in post-judgment proceedings.  The New York

courts have explicitly declined to follow *Eitzen Bulk*, noting that the order "did not address an

issue relevant to this particular proceeding, namely, that the relief sought here greatly exceeds

the relief sought in *Koehler*."  *Samsun*, 2011 WL 1844061, at *4.

    We respectfully submit that the conclusory statements in *Commerzbank* and

*Eitzen Bulk* are incorrect, as two different New York justices have since held.  *Koehler* did not

address the separate entity rule, and the New York courts and this Court have explicitly applied

the separate entity rule to the facts of this case post-*Koehler*.  Moreover, as Judge Rakoff stated,

"it is not for this Court to limit the separate entity doctrine beyond the limits already set by the

courts of New York."  *Motorola Credit*, 288 F. Supp. 2d at 561.

    But Hamid's petition fails even under *Commerzbank*.  The court accepted that the

judgment creditor could not assert "any greater rights as a judgment creditor than those [the

judgment debtor] has as a customer of the bank."  2011 WL 507266, at *6.  The court stated that

in its view, however, the relevant question was "whether [the judgment debtor], if it were in New

York, could direct the *entity*, Commerzbank, to pay over the money it holds on deposit in [the

judgment debtor's] name in Germany, to an account in New York."  *Id.* (emphasis in original).

The court rejected Commerzbank's position because it "put forth no evidence that it could

rightfully refuse to pay over the assets it holds to a location in New York."  *Id.*  Here, Hamid

makes no allegation that Asia Insurance possesses such a right, and HBL has submitted evidence

that it could rightfully refuse to make such a payment.  (Akram Dec. ¶ 5.)  Thus, even under Judge Castel's restrictive test – which we submit is incorrect because it ignores the separate entity rule – the facts here require dismissal of the petition because granting the petition would allow Hamid to assert greater rights as a judgment creditor than Asia Insurance holds as a judgment debtor.

*Commerzbank* is also readily distinguishable because Judge Castel placed "significant" importance on the decision of a German court declining to issue a preliminary injunction requiring Commerzbank to pay over the money frozen in its account.  2011 WL 507266 at *8.  In determining whether the court should exercise its discretion to decline to exercise jurisdiction on comity grounds, the court noted that the German court "presented with a related controversy, has not espoused the view that the interests of Germany in applying its own banking laws outweighs the United States' interest in enforcing its own judgments."  *Id.*  Here, the Pakistani court has not ruled on Asia Insurance's request for relief, the record is not well-developed, and important policy concerns that guide the application of the separate entity rule, remain in place – *i.e.*, the tension between conflicting judgments in multiple jurisdictions and the burden on foreign banks with branches in New York in conducting a worldwide search for assets of the judgment creditor.[6]

---

[6]     If HBL were required to turn over to Hamid property of Asia Insurance located in Pakistan, one can rest assured that Asia Insurance would argue that such an order would not discharge HBL's obligations to Asia Insurance in Pakistan, because Pakistan's courts do not recognize judgments of U.S. courts.  *See* Pakistani Foreign Judgment Enforcement: Civil Procedure Code of 1908 Section 44-A (stating that Pakistan only recognizes the foreign judgments of a "reciprocating territory"); Guy S. Lipe, *The Hague Convention on Choice of Court Agreements: Creating Room for Choice in International Cases*, 33 Hous. J. Int'l L. 1, 3 (2010) (noting that the U.S. has "no treaty at all on enforcement of U.S. judgments abroad" and the Hague Convention, once ratified would provide that as to other signatories).  This could result in double liability for HBL in New York to Petitioner and in Pakistan to Asia Insurance.  Such a threat is unconscionable and unconstitutional.  *See W. Union Tel. Co. v. Pennsylvania,* 368 U.S. 71 (1961); *JPMorgan Chase Bank, N.A. v. Motorola, Inc.*, 846 N.Y.S.2d 171 (1st Dep't 2007).

*     *     *

Sound policy reasons support the continued importance of the separate entity rule in both pre-judgment and post-judgment contexts and have been set forth in numerous decisions both before and after *Koehler* (and by *amici*, who consistently urge courts not to disrupt the rule).[7]  These concerns fall into three general categories:  that abrogation of the separate entity rule would (1) constantly draw banks into cross border disputes, and that these disputes could frequently result in conflicting judgments between the United States and a foreign court, (2) flood New York courts with judgment creditors seeking to obtain assets not held in New York but all over the world, and (3) substantially increase the costs and risks to banks associated with having an office in New York.

The first concern arises anytime – like this case – property held by a bank could be subject to multiple claims in multiple jurisdictions.  Second, abrogating the separate entity rule would invite to New York every judgment creditor trying to reach an asset of any judgment debtor held by a bank anywhere in the world.  This is because so many banks have a New York branch, and New York would be following a uniquely expansive view on the issuance of extraterritorial garnishment orders.

This would burden New York courts as well as New York branches of banks. Turnover orders served on a small New York branch at a global bank may seek to require that bank to search its entire organization to determine whether property belonging to the judgment debtor could be found at any of its branches or affiliates anywhere in the world and take whatever steps necessary to transfer that property to New York.  This would impose substantial

---

[7]     The Clearing House Association, the Institute of International Bankers and the Federal Reserve Bank of New York each filed *amicus* briefs in *Samsun*.  The Clearing House Association also filed an *amicus* brief in *Koehler*.

costs and risks on the banks merely because they have New York operations.  Adding to the already significant cost, customers may be reluctant to make deposits in or otherwise have property in the possession of banks that have branches in New York because of the additional risk to which customers are exposed.  As a result, foreign banks might lose business based on their decision to maintain a New York presence.  In tandem, if the separate entity rule were abrogated, the risks and costs associated with maintaining a New York branch could well lead many banks to reexamine their continued presence in New York.

This concern is not speculative.  In *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), *overruled by Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58 (2d Cir. 2009), the court held that electronic fund transfers ("EFTs") for the defendants' benefit were "attachable property" pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.  The *Winter Storm* ruling, and its expansion of the definition of "attachable property" in the context of admiralty or maritime claims, had significant consequences for banks in New York:

> This Court was recently informed that, currently, leading New York banks receive numerous new attachment orders and over 700 supplemental services of existing orders *each day*.  This is confirmed by the striking surge in maritime attachment requests in this district, which now comprise approximately one third of all cases filed in the Southern District of New York.  As a consequence, New York banks have hired additional staff, and suffer considerable expenses, to process the attachments.  *See id.* at 8 (noting that each attachment requires banks to amend "their software screens that list entities and other persons whose financial transactions must be blocked by banks").  The sheer volume of amendments to the software screens leads to many false "hits" of funds subject to attachment, which has allegedly introduced significant uncertainty into the international funds transfer process.  *See id.* at 8, 12.  Finally, banks are understandably loath to be placed in the middle of international civil disputes with which they have no connection.

*Cala Rosa Marine Co. v. Sucres Et Deneres Grp.*, 613 F. Supp. 2d 426, 431 (S.D.N.Y 2009).

The Second Circuit overturned *Winter Storm* seven years later and explained the "unforeseen consequences" the decision had on banks in New York. *Jaldhi Overseas*, 585 F.3d at 61-62. The court noted that *Winter Storm* had threatened the usefulness of the U.S. dollar in international transactions and that lawyers had begun to advise clients to conduct international transactions in a currency other than U.S. dollars. *Id.*

## CONCLUSION

For the foregoing reasons, Petitioner's motion should be denied, and the Petition should be dismissed.[8]

Dated: New York, NY
      June 24, 2011

                                        Respectfully submitted,

                                        SHEARMAN & STERLING LLP

                                        By:  __/s/ Brian H. Polovoy_____
                                              Danforth Newcomb
                                              Brian H. Polovoy
                                              Terence P. Gilroy

                                        599 Lexington Avenue
                                        New York, NY  10022-6069
                                        Telephone: (212) 848-4000

                                        *Counsel for Respondent Habib Bank Limited*

---

[8] There are additional grounds on which the Petition can be dismissed, including comity, lack of due process, and the defenses asserted in HBL's answer. We submit the reasons stated above provide ample grounds for dismissing the Petition at this stage, but we will brief all additional grounds at this time if the Court wishes.