UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
TAHIR HAMID,

                    Petitioner,

     -against-

HABIB BANK LIMITED and
NATIONAL BANK OF PAKISTAN,          Docket No.: 1:11-CV-0920 (LAP)

               Respondents.      July 22, 2011
--------------------------------------------------------x


**MEMORANDUM OF LAW OF PETITIONER TAHIR HAMID IN REPLY
TO MEMORANDUM OF LAW OF RESPONDENT HABIB BANK LIMITED
IN RESPONSE TO ORDER TO SHOW CAUSE DATED APRIL 28, 2011
<u>(DOCKET NO. 36)</u>**


LOVEJOY & ASSOCIATES
Attorneys for Petitioner,
Tahir Hamid
Frederick A. Lovejoy, Esq.
276 Center Road
Easton, Connecticut 06612
(203) 459-9941
(203) 459-9943 (telefax)

## TABLE OF CONTENTS

STATEMENT OF FACTS ....................................................................   1

CHRONOLOGY OF FILINGS/SERVICE ........................................   3

POINT I ...........................................................................................   4

MANY OF HABIB BANK LIMITED'S ASSERTIONS ARE INACCURATE
AND/OR NOT BASED IN FACT ............................................................   4

1)  HABIB BANK LIMITED'S ASSERTION CONCERNING SERVICE OF THE
JUDGMENT DEBTOR ASIA INSURANCE COMPANY, LTD. IS NOT
CORRECT ..........................................................................................   4

2)  HABIB BANK LIMITED'S CONTENTION THAT TAHIR HAMID IS NOT
THE SUCCESSOR IN INTEREST TO THE MARCH 26, 2003 JUDGMENT
IS NOT SO! .......................................................................................   6

3)  HABIB BANK LIMITED'S CONTENTION THAT PETITIONER TAHIR HAMID
DID NOT SERVE THE HEADQUARTERS OFFICE OF HABIB BANK LIMITED
IN KARACHI, PAKISTAN IS NOT CORRECT ...........................................   7

4)  HABIB BANK LIMITED'S CLAIM THAT IT ADEQUATELY RESPONDED TO
TAHIR HAMID'S PETITION IS DISINGENUOUS. IT SIMPLY FAILED
REPEATEDLY TO COMPLY WITH THE SUBPOENAS SERVED AND THE
FED.R.CIV.P. ....................................................................................   8

POINT II ..........................................................................................   10

THE SEPARATE ENTITY RULE DOES NOT APPLY IN POST-JUDGMENT
COLLECTION CASES ........................................................................   10

POINT III .........................................................................................   16

HABIB NATIONAL BANK'S CLAIM THAT ASIA INSURANCE COMPANY, LTD.
VOLUNTARILY SUED HABIB NATIONAL BANK IN PAKISTAN, AND THAT
A RULING IN PAKISTAN PREVENTS THIS COURT FROM ISSUING A
TURNOVER ORDER, SHOULD BE REJECTED BY THIS COURT .......................   16

POINT IV .........................................................................................   17

HABIB BANK LIMITED'S CLAIM THAT THE FOREIGN EXCHANGE
REGULATION ACT, 1947 PROHIBITS TRANSFER OF MONIES TO SATISFY
TAHIR HAMID'S JUDGMENT IS A SMOKESCREEN ................................   17

**POINT V** ........................................................................................................ **18**

**THE PAKISTANI LEGAL SYSTEM IS: 1) NOTORIOUSLY CORRUPT,
2) SUBJECT TO UNDUE BUSINESS INTERESTS, 3) SUBJECT TO
PRESSURE FROM GOVERNMENTAL AUTHORITIES, AND
4) MOVES AT A SNAIL'S PACE** ....................................................................... **18**

**CONCLUSION** ............................................................................................... **19**

## TABLE OF AUTHORITIES

**CASES:**                                                                                                    **Page**

Allied Maritime Inc. v. Descatrade SA, 620 F.3d 70 (2d Cir. 2010).....................................   12

Asia Insurance Company, Ltd. v. M/V BU YI HE (1:06CV15188-LAP)............................   1

Cronan v. Shilling, (S.Ct. N.Y. 1950), 100 N.Y.S. 2d 474 aff'd (1st Dept.)
282 A.D. 940, 126 N.Y.S. 2d. 1921) ...................................................................   13

Digitrex Inc. v. Johnson, 491 F.Supp. 66 (S.D.N.Y. 1980)........................................   13,14

Eitzen Bulk A/S v. State Bank of India, et al, 09 CV 10118 (S.D.N.Y. Aug. 3, 2010)........   12

Gayphon Domestic VI, LLC v. APP International Finance Company B.V.,
836 N.Y.S. 2d 4, 41 A.D. 3d 35 (1st Dept. 2007) ...................................................   16

Greenbaum v. Handelsbanken NY, 26 F.Supp. 2d 649 (S.D.N.Y. 1998) ...........................   12

JW Oilfield Equipment, LLC v. Commerzbank Ag, 18 MS 0103(PKC), 2011 U.S. Dist.
LEXIS 19094 at 15-19 (S.D.N.Y. Jan. 14, 2011) .................................................11,12,17

Koehler v. Bank of Bermuda, Ltd., 12 N.Y. 3d 533 (2009)...............................................3,10,12,
                                                                                              14,15,16

Koehler v. Bank of Bermuda, Ltd., 577 F.3d 497 (2d Cir. 2009) ......................................   3

Monies v. Commercial Bank of Kuwait, S.A.K., 399 F.Supp. 2d 310 (S.D.N.Y. 2005)
(rev'd on other grounds, 204 Fed. Appx. 988 (2d Cir. 2006))................................   12

Parbulk II AS v. Heritage Maritime S.A., No. 651285/11
(Sup. Ct. N.Y. County 6/7/2011) .........................................................................   15

S&S Machinery Corp. v. Manufacturers Hanover Trust Company, 638 N.Y.S. 2d 953,
219 A.D. 2nd 249 (1st Dept., 1996).........................................................................   14

Samsun Logix Corp. v. Bank of China, 2011 WL1944061
(Sup. Ct. N.Y. County 5/12/2011) .......................................................................   15

Shaheen Sports, Inc. and Tajmahal Sports Company v. Asia Insurance Company, Ltd.,
98 CV 5951 (RLC)...............................................................................................   1,6

**STATUTES:**

N.Y. C.P.L.R. § 5225(b) .......................................................................................   4,5

N.Y. C.P.L.R. § 5227 ................................................................................................... 5

Fed. R. Civ. P. Rule 4(m) .......................................................................................... 5

N.Y. Business Corporation Law § 1005 .................................................................... 6,7

Fed. R. Civ. P., Rule 12 .............................................................................................. 9

Foreign Exchange Regulation Act 1947 .................................................................... 17

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TAHIR HAMID,

                    Petitioner,

     -against-

HABIB BANK LIMITED and
NATIONAL BANK OF PAKISTAN,          Docket No.: 1:11-CV-0920 (LAP)

                    Respondents.      July 22, 2011
----------------------------------------------------------x

**MEMORANDUM OF LAW OF PETITIONER TAHIR HAMID IN REPLY
TO MEMORANDUM OF LAW OF RESPONDENT HABIB BANK LIMITED
IN RESPONSE TO ORDER TO SHOW CAUSE DATED APRIL 28, 2011
<u>(DOCKET NO. 36)</u>**

      Petitioner Tahir Hamid respectfully submits this Memorandum of Law in reply to the

Memorandum of Law of Respondent Habib Bank Limited in Response to Order to Show Cause

dated April 28, 2011 (Docket No. 36), and states as follows:

<u>**STATEMENT OF FACTS**</u>

      In 1998, the predecessors in interest to petitioner Tahir Hamid filed an action denoted

<u>Shaheen Sports, Inc. and Tajmahal Sports Company v. Asia Insurance Company, Ltd.</u>, 98 CV

5951 (RLC).[1] At the time of the filing, Shaheen Sports, Inc. was a New York corporation, and its

sole shareholder, Mr. Tahir Hamid, was a resident of Jackson Heights, New York. The basis for

jurisdiction in <u>Shaheen Sports, Inc. and Tajmahal Sports Company v. Asia Insurance Company,</u>

<u>Ltd</u>, was the admiralty jurisdiction 28 U.S.C. §1333 of this Court.

---

[1] Shaheen Sports, Inc. was a New York incorporated corporation. Asia Insurance Company, Ltd.,
while incorporated in Pakistan, has claimed that it maintains an office in New York City and is
doing business therefrom. (See <u>Asia Insurance Company, Ltd. v. M/V BU YI HE</u>
(1:06CV15188-LAP) at Docket No. 1)

Thereafter, defendant Asia Insurance Company, Ltd. filed a Motion to Dismiss on November 10, 1998 (Docket No. 5), which was denied by U.S. District Judge Carter in an opinion rendered on April 5, 2000 (Docket No. 13). As part of that opinion, Judge Carter found that defendant Tajmahal Sports Company was a nominal plaintiff.

Following the issuance of the Court's April 5, 2000 holding, that defendant Asia Insurance Company, Ltd. was subject to this Court's jurisdiction, it simply decided to "disappear" and refused to defend on the merits.

Subsequent thereto, the plaintiffs Shaheen Sports, Inc. and Tajmahal Sports Company conducted some limited discovery. Thereafter, on March 26, 2003 (Docket No. 32), the Court entered judgment in favor of Shaheen Sports, Inc. and Tajmahal Sports Company against defendant Asia Insurance Company, Ltd. in the sum of $369,423.91.

Because the failure of defendant Asia Insurance Company, Ltd. to pay plaintiff Shaheen Sports, Inc.'s claims, the company ceased to have any assets with which to conduct business, and was in the process of dissolving. It was, however, dissolved by proclamation on June 25, 2003. Prior to its dissolution on June 25, 2003, it transferred to Mr. Hamid, Shaheen Sports, Inc.'s President and sole shareholder, all of its rights to the $369,423.91 judgment obtained in 98 CV 5951. See: 1) Affidavit of Tahir Hamid at Exhibit 1; 2) the 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy; and 3) the 28 U.S.C. § 1746 Statement of Terre Schwartz at Exhibit 2. At about the same time, Mr. Hamid moved to Houston, Texas, to seek a new business opportunity.

During the years following 2003, Tahir Hamid attempted in various ways to perfect the March 26, 2003 judgment, including seeking legal advice on suing Asia Insurance Company, Ltd. on the judgment in Pakistan. That route was not followed due to the plaintiffs' and its counsel's familiarity with the Pakistani legal system; i.e., that it is exceptionally slow (See

Exhibit 4 to 28 U.S.C. § 1746 of Frederick A. Lovejoy) and subject to: 1) pressure from business interests, and 2) widespread corruption.

Finally, after the <u>Koehler</u> decisions; i.e., <u>Koehler v. Bank of Bermuda, Ltd.</u>, 12 N.Y.3d 533 (2009), and <u>Koehler v. Bank of Bermuda, Ltd.</u>, 577 F.3d 497 (2d Cir. 2009), were rendered, the petitioner Tahir Hamid decided to have an investigation conducted of Pakistani banks that had New York offices to determine if any of those Pakistani possessed assets of defendant Asia Insurance Company, Ltd. that might be attached pursuant to CPLR 5225.

## CHRONOLOGY OF FILINGS/SERVICE

1) March 26, 2003 – Tahir Hamid's predecessors, Shaheen Sports, Inc. and Tajmahal Sports Company, obtain judgment in 98 CV 5951 in the amount of $369,423.91 (Docket No. 32)

2) April, 2003 – Shaheen Sports, Inc. transfers all of its rights to the March 26, 2003 judgment to Tahir Hamid (See 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy and Exhibit 1 thereto)

3) June 25, 2003 – Shaheen Sports, Inc. dissolved

4) February 9, 2011 – Petitioner Tahir Hamid files Petition in 11-CV-920(LAP)

5) February 21, 2011 – Petition, Affidavit of Frederick A. Lovejoy, Subpoena and Restraining Notice, and Notice to Garnishee and Exemption of Claim Form mailed via U.S. Mail to Asia Insurance Company, Ltd. (See 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy)

6) February 28, 2011 – Respondents Habib Bank Limited and National Bank of Pakistan served via their New York offices (See Docket Nos. 5 & 6)

7) March 18, 2011 – Attorney Mumtaz Alvi writes counsel for petitioner Tahir Hamid that New York branches of Habib Bank Limited and National Bank of Pakistan do not possess any of Asia Insurance Company, Ltd.'s assets

8) March 18, 2011 – Frederick A. Lovejoy telephoned the offices of Mumtaz Alvi and left a message that petitioner Tahir Hamid would continue to directly file pleadings on respondents until such time as Attorney Alvi filed an Appearance (See Docket No. 25-1 at paras. 12 & 13 – 28 U.S.C. § 1746 of Frederick A. Lovejoy, dated May 18, 2011)

9) March 23, 2011 – Notice of Lawsuit and Waiver of Service of Summons, Summons, Petition, Affidavit of Frederick A. Lovejoy, Subpoena and Restraining Notice and

Exemption of Claim Form served by U.S. Mail on Habib Bank Limited and National Bank of Pakistan's Pakistani head offices (See 28 U.S.C. § 1746 Statement of Fredrick A. Lovejoy)

10)   May 3, 2011 – The Judgment and Orders clerk issued Clerk's Certificates for Habib Bank Limited and National Bank of Pakistan, noting their default. (See Exhibit _ to 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy)

11)   May 11, 2011 - Petition, Affidavit of Frederick A. Lovejoy, Subpoena and Restraining Notice, and Notice to Garnishee and Exemption of Claim Form mailed via U.S. Mail – Registered Return Receipt Requested to Asia Insurance Company, Ltd. (See Exhibit 2 to the 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy)

12)   July 13, 2011 - Notice of Lawsuit and Waiver of Service of Summons, Summons, Petition, Affidavit of Frederick A. Lovejoy, Subpoena and Restraining Notice and Exemption of Claim Form served by U.S. Mail – Registered Return Receipt Requested on Habib Bank Limited and National Bank of Pakistan's Pakistani head offices. (See Exhibit 3 to the 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy)

## POINT I

### MANY OF HABIB BANK LIMITED'S ASSERTIONS ARE INACCURATE AND/OR NOT BASED IN FACT

1)   **HABIB BANK LIMITED'S ASSERTIONS CONCERNING SERVICE OF THE JUDGMENT DEBTOR ASIA INSURANCE COMPANY, LTD. IS NOT CORRECT**

N.Y. C.P.L.R. § 5225(b) states as follows:

(b) Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse

claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.
(emphasis added)

Likewise, N.Y. C.P.L.R. § 5227 states as to service on the judgment debtor as follows:

Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested.
(emphasis added)

Additionally, Fed. R. Civ. P. Rule 4(m), which governs "Time Limit for Service" in federal actions, states as follows:

(m)  Time Limit for Service.

If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Rule 4(m) further clearly states:

This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1). (emphasis added)

Thus, Habib Bank Limited's assertion that the judgment debtor was not served properly pursuant to N.Y. C.P.L.R. §5225(b) or §5227 is incorrect. Likewise, its claim that Asia Insurance Company, Ltd. was not served within 120 days is not so, and even if so, the 120 day rule is not applicable to service of the foreign judgment Debtor Asia Insurance Company, Ltd. under Fed. R. Civ. P., Rule 4(m).

2)    **HABIB BANK LIMITED'S CONTENTION THAT TAHIR HAMID IS NOT THE SUCCESSOR IN INTEREST TO THE MARCH 26, 2003 JUDGMENT IS NOT SO!**

While it is true that Shaheen Sports, Inc. was dissolved on June 25, 2003 by proclamation, that should not affect petitioner Tahir Hamid's right to prosecute the March 26, 2003 judgment.

Simply put, Tahir Hamid has submitted an Affidavit in this case and in <u>Shaheen Sports, Inc., et al v. Asia Insurance Company, Ltd.</u> in support of Shaheen Sports, Inc.'s Motion to Substitute Tahir Hamid in the stead of Shaheen Sports, Inc. and Tajmahal Sports Company in <u>Shaheen Sports, Inc., et al v. Asia Insurance Company, Ltd.</u>, 98 CV 5951 (LAP), unequivocally stating that the March 26, 2003 Judgment was assigned to him personally. (Docket No. 39) The motion in <u>Shaheen</u> has not yet been ruled on by the Court.

Unfortunately, neither counsel for Shaheen Sports, Inc. and/or Tahir Hamid have been able to find a copy of the April 2003 Resolution. However, other contemporaneous documentation corroborates that fact: 1) Mr. Tahir Hamid was the sole shareholder of Shaheen Sports, Inc. (See 28 U.S.C. § 1746 Statement of Terre Schwartz), and 2) that an April 2003 Resolution was passed by Shaheen Sports, Inc. (See 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy and Exhibit 1 attached thereto)

Moreover, even if the above is not considered as acceptable proof by this Court, N.Y. Business Corporation Law § 1005 "Procedure After Dissolution" clearly states that Shaheen Sports, Inc. has the right to wind up its affairs. Business Corporation Law § 1005 states:

(a)    After dissolution

(1)    The corporation shall carry on no business except for the purpose of winding up its affairs.

> (2)     The corporation shall proceed to wind up its affairs, with power to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and <u>do all other acts appropriate to liquidate its business</u>.

\*     \*     \*

> (4)     The corporation may sue or be sued in all courts and participate in actions and  proceedings, whether juridical, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it.
>
> (b)     The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution, except as provided in sections 1007 (Notice to creditors; filing or barring claims) or 1008 (Jurisdiction of supreme court to supervise dissolution and liquidation).

(emphasis added)

Thus, it is evident that Shaheen can/could, pursuant to N.Y. B.C.L. § 1005, even presently pass a resolution, if need be, at this time to "wind up" by assigning the March 26, 2003 judgment to its sole shareholder, Tahir Hamid, or continue to wind up by bringing the petition herein it is own name.

If the Court denies the motion to substitute Tahir Hamid for Shaheen in <u>Shaheen</u> (98CV5951), Hamid/Shaheen will seek permission of the Court, herein, to add Shaheen as a party petitioner/plaintiff.

**3)     HABIB BANK LIMITED'S CONTENTION THAT PETITIONER TAHIR HAMID DID NOT SERVE THE HEADQUARTERS OFFICE OF HABIB BANK LIMITED IN KARACHI, PAKISTAN IS NOT CORRECT**

Following the so-called response of Habib Bank Limited's former counsel on March 18, 2011, petitioner Tahir Hamid decided, in an abundance of caution, to serve the headquarters office of Habib Bank Limited in Karachi, Pakistan. To that end it served by U.S. Mail, postage prepaid, a federal: 1) Notice of Service of Summons, and 2) Notice of a Lawsuit and Request for Waiver of Service of Summons on March 21, 2011. In a further abundance of caution, the petitioner Tahir Hamid sent the above to Habib Bank Limited's headquarters office again on July

13, 2011 by Registered Return Receipt Request U.S. Mail. (See Chronology of Filings/Service and the 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy)

Finally, petitioner Tahir Hamid is in the process of having Habib Bank Limited's headquarters served via the Hague Convention. (Hague Convention service in the <u>Shaheen Sports, Inc. and Tajmahal Sports Company v. Asia Insurance Company, Ltd.</u>, 98 CV 5951 matter unfortunately took from late 1998 until September 2001, due to the speed or lack thereof of the Pakistani authorities to effect the same.)

**4)  HABIB BANK LIMITED'S CLAIM THAT IT ADEQUATELY RESPONDED TO TAHIR HAMID'S PETITION IS DISINGENUOUS. IT SIMPLY FAILED REPEATEDLY TO COMPLY WITH THE SUBPOENA'S SERVED AND THE FED.R.CIV.P.**

Habib Bank Limited's claim that it adequately responded to petitioner Tahir Hamid's Petition by having Attorney Mumtaz Alvi send petitioner's counsel a telefax cannot withstand the "straight face" test. Simply put, the Fed. R. Civ. P. requires that an answer/response be filed. Moreover, the so-called response purposely ignored the fact that the Petition, Subpoena and Restraining Notice and Exemption Claim form were not directed solely to Habib Bank Limited's New York Branch, but to Habib Bank Limited's headquarters and all of its branches.

Following receipt of Attorney Mumtaz Alvi's telefax dated March 18, 2011, counsel for petitioner Tahir Hamid immediately telephoned Attorney Alvi's office and left him a voicemail, as instructed by his staff, stating that Attorney Alvi needed to file an appearance and unless Alvi did so, that the petitioner Tahir Hamid would continue to serve papers on Habib Bank Limited and National Bank of Pakistan only.

Thereafter, on April 5, 2011 (Docket No. 7), Judge Cote issued a Notice of Initial Pretrial Conference for April 28, 2011. Even though not directed by the Court, counsel for petitioner

Tahir Hamid sent a photocopy of that notice to respondent Habib Bank Limited at 60 East 42nd Street, New York, New York.

Counsel for petitioner Tahir Hamid then wrote Judge Cote on April 19, 2011 for the purpose of saving the Court resources when it was evidence that respondents Habib Bank Limited and National Bank of Pakistan were not going to appear. Photocopies of that letter were also sent to Habib Bank Limited and National Bank of Pakistan directly.

Thereafter, on April 29, 2011, Judge Cote issued an Order to Show Cause. (See Docket No. 12) It was only after the Court "cornered" the respondents that they decided to appear according to the Fed. R. Civ. P. Simply put, the rule in this district and that contained in the Fed. R. Civ. P. is that respondents file answers to a petition with the Court. Fed. R. Civ. P., Rule 12 states:

> **Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing**
>
> (a)  Time to Serve a Responsive Pleading.
>
> (1)  In General.
>
> Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:
>
> (A)  A defendant must serve an answer:
>
> (i)  within 21 days after being served with the summons and complaint;

(emphasis added)

Additionally, Habib Bank Limited's claim that no Clerk's Certificates were issued noting the default of Habib Bank Limited is also inaccurate. (See Chronology of Filings/Service, and 28 U.S.C. 1746 Statement of Frederick A. Lovejoy)

Finally, Habib Bank Limited has belatedly filed responses, actually objections, to Tahir Hamid's Requests for Production of Documents and Interrogatories. It as well failed to respond to the Subpoena and Disclosure Notice[2] served with the Petition on February 28, 2008. Stated correctly, Habib Bank Limited has repeatedly acted in bad faith from the outset of this litigation. It was only after this Court issued various orders that Habib Bank Limited realized that it would be required to comply with the rules.

## POINT II

### THE SEPARATE ENTITY RULE DOES NOT APPLY IN POST-JUDGMENT COLLECTION CASES

Much has been made by Habib Bank Limited of the so-called "separate entity rule" which Habib Bank Limited asserts insulates the operations of each branch outside New York from the jurisdictional power of this Court. The Supreme Court of the United States long ago examined issues surrounding the import of separate bank branches in the post-judgment context holding:

> Whether [a] branch is a "separate entity," as the Court of Appeals thought, is not germane to the present narrow issue. It is not a separate entity in the sense that it is insulated from respondent's managerial prerogatives. Respondent has actual, practical control over its branches . . . [the governing law] authorizes it "To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons" – as one entity, not branch by branch. The branch bank's affairs are, therefore, as much within the realm of the *in personam* order entered by the District Court as are those of the home office. Once personal jurisdiction of a party is obtained, the District Court has authority to order it to "freeze" property under its control, whether the property be within or without the United States. See *New Jersey v. New York City*, 283 U.S. 473, 482.

United States v. First Nat'l City Bank, 479 U.S. 378, 384 (1965).

---

[2] Even though Habib Bank Limited claims that <u>Koehler</u> requires a bank to only disclose assets other than bank accounts that it may hold belonging to a judgment creditor, such as Asia Insurance Company, Ltd., Habib has refused to search for and disclose such assets. Tahir Hamid intends to request leave of Court to file a Motion to Compel Habib Bank Limited's disclosure.

While Habib Bank Limited seems to argue that "Habib's New York branch" does not control Habib Bank Limited, this argument looks at the wrong issue from the wrong direction. The proper question is does Habib Bank Limited control Habib's New York branch? The answer is a resounding yes. The governing law in <u>First Nat'l City Bank, supra</u>, Federal law, like New York State Banking Law, recognizes that suit against a bank is not limited to the single branch served but instead is against the *<u>institution as a whole</u>*.

Other U.S. District Judges in the Southern and Eastern Districts of New York which have recently addressed this issue have found that while the separate entity rule may be applied to *<u>pre-judgment attachment</u>* proceedings, there simply is no "separate entity rule" which applies to *<u>post-judgment garnishment</u>* proceedings. The two proceedings are entirely different. Recently, Judge Castel, in a well reasoned and thorough opinion addressing the same issues Habib Bank Limited raises again in this case, held that while "[t]he separate entity rule in New York requires that each branch of a bank be treated as a separate entity for *<u>attachment purposes</u>* . . . . New York courts <u>will</u> <u>not</u> apply the separate entity rule *in post-judgment execution proceedings*." <u>JW Oilfield Equipment, LLC v. Commerzbank Ag</u>, 18 MS 0302(PKC), 2011 U.S. Dist. LEXIS 19094 at 15-19 (S.D.N.Y. Jan. 14, 2011). Similarly, Judge Wexler in the Eastern District, examining the separate entity, held:

> This rule of law, which was described as "well-established" in 1950, seems outdated in light of current banking transactions. <u>There is no question that modern banking makes Plaintiff's funds available to him at any branch in the country and likely, the world</u>. The "endless confusion" feared by *Cronin v. Schilling*, 100 N.Y.S.2d 474 (N.Y. County 1950)] would not likely ensue if Plaintiff saw fit to call upon any given branch of Wachovia to perform a financial transaction on any given day. Indeed, the anomaly of allowing a bank that "trumpets their account-holders' ability to access their funds instantaneously anywhere in the world" to "rely on the vestige of the separate entity rule to shield such accounts from attachment by judgment creditors," has been noted. *Motorola Credit Corp. v. Uzan*, 288 F.Supp. 558, 561 (S.D.N.Y. 2003). (emphasis added)

McCarthy v. Wachovia Bank, N.A., 2008 U.S. Dist. LEXIS 98586 at 14-15 (E.D.N.Y. 2008). Habib Bank Limited's webpages boast that banking can be conducted anywhere in the world. (See Exhibits 5 and 6 to 28 U.S.C. §1746 Statement of Frederick A. Lovejoy)  Similarly, Judge Scheindlin in Monies v. Commercial Bank of Kuwait, S.A.K., 399 F.Supp. 2d 310, 315-316 (S.D.N.Y. 2005) (rev'd on other grounds, 204 Fed. Appx. 988 (2d Cir. 2006)) held that "[t]he law seems fairly well-settled that the domestic branch of a foreign bank is not a separate legal entity under either New York or federal law." Quoting Greenbaum v. Handelsbanken NY, 26 F.Supp. 2d 649, 652-53 (S.D.N.Y. 1998).

This Court has rejected the very same argument now asserted by Habib Bank Limited when raised by State Bank of India in Eitzen Bulk A/S v. State Bank of India, finding that bank improperly limited its Subpoena response to property held only by its New York branch "based on its legally incorrect understanding of New York's 'separate-entity rule'" noting ". . . the Court of Appeals of New York has recently rejected the position that Habib Bank Limited now asserts." Eitzen v. State Bank of India, et al, 09 CV 10118 (S.D.N.Y. Aug. 3, 2010) Hellerstein, J. (Order of Aug. 3, 2010, Docket 28 at pages 6-7) (citing Koehler v. Bank of Bermuda, Ltd., 12 N.Y.3d 533 (2009)). Thus, there is no reason to treat Habib Bank Limited differently from State Bank of India.

Habib Bank Limited's reliance on Allied Maritime Inc. v. Descatrade SA, 620 F.3d 70 (2d Cir. 2010) is completely misplaced. Allied Maritime was a pre-judgment attachment action brought under Admiralty Rule B, not a post-judgment garnishment proceeding brought under New York state law. See also JW Oilfield, 2011 U.S. Dist. LEXIS 19094 at 19 n.3 ("The separate entity rule may still have application in prejudgment attachment proceedings, even after Koehler. See, e.g., Allied Maritime, 620 F.3d 70").

Simply stated, Habib Bank Limited's assertion that its activities in New York and its New York branch do not subject the entire banking institution to the jurisdiction of this Court is legally incorrect. Habib Bank Limited's assertion that petitioner Tahir Hamid never served the headquarters of Habib Bank Limited, or any other branch, is not true and is irrelevant. (See 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy at paras. 10 and 13, and Exhibit 3 attached hereto) Because there is no separate legal entity knows as "Habib New York Branch", Habib Bank Limited's argument as to its New York branch's purported lack of control over documents, material and information is irrelevant to Habib Bank Limited's obligation to respond to the Subpoena on a worldwide basis.

Twenty-one (21) years ago, U.S. District Judge Knapp recognized in Digitrex Inc. v. Johnson, 491 F.Supp. 66 (S.D.N.Y. 1980) that the underpinning for the separate entity rule no longer existed.

In writing his opinion in Digitrex, Judge Knapp quoted, from Cronan v. Shilling, (S.Ct.N.Y. 1950), 100 N.Y.S. 2d 474, 476 aff'd (1st Dept.) 282 A.D. 940, 126 N.Y.S. 2d. 1921), the reason underlying the separate entity rule:

> "Unless each branch of a bank is treated as a separate entity for attachment purposes, no branch could safely pay a check drawn by its depositor without checking with all other branches and the main office to make sure that no warrant of attachment had been served upon any of them."

(emphasis added)

Judge Knapp went on to state the following in holding the "separate entity" rule obsolete:

> We believe that this rule no longer is valid. Counsel for Manufacturers Hanover informs us:

> > "Today, Manufacturers Hanover, along with most other large commercial banks in New York City, uses highspeed computers with central indexing capabilities to keep track of its depositors' checking accounts. The employment of these computers, together with other sophisticated communications equipment, has enabled the Bank to

13

monitor checking accounts from its main office. This, in turn, has permitted the centralization at the main office of many administrative functions, such as the imposition of a hold on a depositor's account. <u>Under these circumstances, service of a restraining notice at the Bank's main office promotes, rather than endangers, the orderly transaction of banking business</u>." (Emphasis supplied)

We take judicial notice of the fact that the operations at most if not all New York City commercial banks, including Manufacturers Hanover, <u>have become largely computerized</u> as described by Manufacturers Hanover's counsel. Consequently it is clear that <u>the argument in favor of the rule set forth in 1950 in Cronan, supra, is no longer persuasive</u>.

(emphasis added)

Likewise, the Supreme Court of New York, First Department, in <u>S&S Machinery Corp. v. Manufacturers Hanover Trust Company</u>, 638 N.Y.S. 2d 953, 954, 219 A.D. 2nd 249 (1st Dept., 1996) recognized the validity of the holding in <u>Digitrex, Inc. v. Johnson</u>, 491 F.Supp. 66 (S.D.N.Y. 1980), stating:

At the time the post-judgment process was served, MHT had a centralized computer database which included "routine retail account and personal and commercial loan information", but not corporate trust accounts. This database was accessible from the main office. Affidavits submitted by bank officials failed to explain the exclusion of corporate trust accounts from the database and asserted that computerization of these records was not mandated by law or regulation. They also asserted that MHT received over 100,000 post-judgment enforcement devices in 1992 and that there was no record of the corporate trust department ever receiving the process at issue here.

\*    \*    \*

Summary judgment should not have been granted on this basis. Contrary to the motion court's ruling, service of the restraining notice and information subpoena upon MHT's main office was legally sufficient. The rule stated in Digitrex, Inc. v. Johnson, 491 F.Supp. 66 [S.D.N.Y.] should have been applied, and the limitation on that rule stated in Therm-X-Chemical & Oil Corp. v. Extebank, 84 A.D.2d 787, 444 N.Y.S.2d 26, does not require a contrary result.

See Documents for Habib Bank Limited's website at Exhibits 5 and 6 to 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy.

A reading of the section of Habib Bank Limited's Memorandum of Law dealing with the separate entity rule discloses that the majority of the case law it relies on is pre-<u>Koehler</u>; i.e.,

June 4, 2009, and thus, obviously, <u>Koehler</u> was not considered by the Courts issuing those rulings.

Two recent Supreme Court of New York cases have, however, held that the separate entity rule was not displaced by <u>Koehler</u>. Tahir Hamid believes that those cases were not decided correctly and/or were based substantially on other issues. In <u>Samsun Logix Corp. v. Bank of China</u>, 2011 WL1944061 (Sup. Ct. N.Y. County 5/12/2011), Judge Solomon stated on at least seven (7) occasions that <u>Samsun Logix</u> had no relationship with New York, and the underlying proceeding where the judgment was obtained was overseas. Here, Shaheen Sports, Inc. was a New York corporation and the judgment was entered in this Court. Likewise, the judgment debtor, Asia Insurance Company, Ltd., claims to have an office and be doing business in New York.

Equally important to Judge Solomon was the fact that the Bank of China's expert opined that the judgment could be enforced in the courts in China. Here, not even Habib Bank Limited's Chief Legal Counsel was bold enough to claim that Tahir Hamid could enforce the judgment in Pakistan or that Tahir Hamid would even get a "fair shake" in Pakistan if he attempted to do so.

Likewise, Tahir Hamid believes that the Court in <u>Parbulk II AS v. Heritage Maritime S.A.</u>, No. 651285/11 (Sup. Ct. N.Y. County 6/7/2011) was incorrect in its ruling, relying on other issues other than the separate entity rule.

Habib Bank Limited's reading of <u>Koehler</u> clearly flies in the face of the Court of Appeals' opinion in which that Court considered the legislative history of N.Y. C.P.L.R. Article 52, stating:

> <u>CPLR Article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or country. It would have been an easy matter for the Legislature to have added such a restriction to the reach of Article 52</u> and

> there is no basis for us to infer it from the broad language presently in the statute. Moreover, we note that the Legislature has recently amended C.P.L.R. 5224 so as to facilitate disclosure of materials that would assist judgment creditors in collecting judgments, when those materials are located outside New York. <u>The 2006 amendment adds a subdivision that expressly allows the securing of out-of-state materials by in-state service of a subpoena on the party in control of the materials. Recent legislation thus supports our conclusion that the Legislature intended C.P.L.R. Article 52 to have extraterritorial reach.</u>

<u>Koehler v. Bank of Bermuda Ltd.</u>, 911 N.E. 825, 333 (12 N.Y. 3d 533 (2009)

Moreover, in <u>Koehler</u> two <u>amicus</u> briefs were submitted, one addressed the "separate entity rule".

Simply put, to read <u>Koehler</u> to cover just stock certificates would create two classes of judgment debtors, those able to seek assets other than bank accounts, which according to Habib Bank Limited would be allowed, and everyone else. Stated differently, some judgment creditors will be lucky enough to perfect their judgments even with out of state/country banks, and others will be cast aside.

## **POINT III**

### **HABIB NATIONAL BANK'S CLAIM THAT ASIA INSURANCE COMPANY, LTD. VOLUNTARILY SUED HABIB NATIONAL BANK IN PAKISTAN, AND THAT A RULING IN PAKISTAN PREVENTS THIS COURT FROM ISSUING A <u>TURNOVER ORDER, SHOULD BE REJECTED BY THIS COURT</u>**

The Courts of New York have repeatedly held that when a foreign judgment creditor starts an overseas action in an attempt to thwart a judgment of a New York Court, that foreign ruling should be ignored.

In <u>Gayphon Domestic VI, LLC v. APP International Finance Company B.V.</u>, 836 N.Y.S. 2d 4, 41 A.D. 3d 35, 37 (1st Dept. 2007), the Court stated:

> Even if the defendants were found to be in violation of an Indonesia court order, <u>they clearly are the engine of their own misfortune</u>. After the IAS court granted summary judgment against them, they started a competing lawsuit in Indonesia. While a state (e.g., New York) may not require a person to do an act in

16

another state (e.g., Indonesia) that is prohibited by the law of that state, <u>orders of foreign courts are not entitled to comity if the litigants who procure them have "deliberately courted legal impediments" to the enforcement of a federal court's orders</u>. (*Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 [2d Cir. 2004]), *cert. denied*, 544 U.S. 1044, 125 S.Ct. 2270, 161 L.Ed.2d 1080 [2005] (internal quotation marks and citations omitted).

(emphasis added)

Stated differently, are the courts sitting in this district willing to allow foreign judgment creditors to avoid the valid judgments of this district court simply by filing an ancillary legal proceeding in their home country after a judgment has already been entered against them?

Likewise, a bank such as Habib Bank Limited cannot raise defenses that belong to the judgment debtor; i.e., Asia Insurance Company, Ltd., as Habib Bank Limited attempts to do herein. See: <u>JW Oilfield Equipment, LL. V. Commerzbank AG</u>, No. 18 MS 0302, 2011 WL507266 (S.D.N.Y. 1/14/2011) at page 5.

## POINT IV

### HABIB BANK LIMITED'S CLAIM THAT THE FOREIGN EXCHANGE REGULATION ACT, 1947 PROHIBITS TRANSFER OF MONIES TO SATISFY TAHIR HAMID'S JUDGMENT IS A SMOKESCREEN

Although the 1947 Act is still a valid statute in Pakistan, it is routinely not enforced; i.e., the State Bank of Pakistan grants exemptions as stated in paragraph 1 of Section 5 of the Foreign Exchange Regulation Act 1947, which states:

Restrictions on payment.

(1) Save as may be provided in and in accordance with any general or special exemption from the provisions of this sub-section, <u>which may be granted conditionally or unconditionally by (the State Bank)</u>, no person or resident in Pakistan shall. . .

(emphasis added)

See Exhibit 3 attached hereto, 28 U.S.C. § 1746 Statement of Muhammad Ahsan Virk, dated July 19, 2011, with attachments (highlight ours) wherein Attorney Virk opines that the Foreign Exchange Act 1947 is not the impediment that Muhammad Akram claims.

Moreover, Habib Bank Limited's in-house legal counsel, Muhammad Akram, simply regurgitates the statute, itself, without stating whether Habib Bank Limited and Asia, who both do substantial business worldwide, have obtained the exemption(s) referred to at the outset of Section 5(1) and/or are exempt therefrom.[3]

### POINT V

### THE PAKISTANI LEGAL SYSTEM IS: 1) NOTORIOUSLY CORRUPT, 2) SUBJECT TO UNDUE BUSINESS INTERESTS, 3) SUBJECT TO PRESSURE FROM GOVERNMENTAL AUTHORITIES, AND 4) MOVES AT A SNAIL'S PACE

It is axiomatic that the legal system, besides being corrupt, subject to undue business interests, and subject to pressure from governmental authorities, works at a snail's pace.

This Court should take judicial notice of the above. All that one needs to do to corroborate the above is to visit the 2010 U.S. State Department Report on Pakistan or other such websites denoted below:

1)  http://www.state.gov/g/drl/rls/hrrpt/2010/sca/154485.htm

2)  http://www.unpan.org/PublicAdministrationNews/tabid/115/mctl/ArticleView/ModuleID/1467/articleId/20426

3)  http://www.dawn.com/2011/03/29/judicial-reform.html

4)  http://www.freedomhouse.org/template.cfm?page=70&release=633

5)  http://www.freedomhouse.org/template.cfm?page=22&year=2007&country=7247

Additionally, in <u>Shaheen</u> (98-5951) (Docket No.10), the Managing Director of Tajmahal Sports Company, Kahlid Mahmood Gundra, stated that it will take at least ten (10) years for a suit to work its way through the Pakistani court system. (See Exhibit 4 to the 28 U.S.C. § 1746 Statement of Frederick A. Lovejoy)

## <u>CONCLUSION</u>

Based on the foregoing, this Court should grant Tahir Hamid's Petition for a Turnover Order in the amount of <u>$411,891.27</u>, so that the judgment issued by this Court some 8½ years ago, on March 26, 2003, against Asia Insurance Company, Ltd. might be satisfied.

Dated: Easton, Connecticut  
       July 22, 2011

LOVEJOY & ASSOCIATES  
Attorneys for Petitioner  
Tahir Hamid


By:_____/s/ Frederick A. Lovejoy_____  
Frederick A. Lovejoy, Esq.  
276 Center Road  
Easton, Connecticut 06612  
(203) 459-9941  
(203) 459-9943 fax  
Email: Lovejoyadm@aol.com

HamidMOL7-11.doc

---

[3] Tahir Hamid requests that this Court grant him leave to serve discovery on Habib Bank Limited to determine how many times it has transferred clients' funds out of Pakistan to foreign branches/banks since July 1, 2010.

<u>CERTIFICATION</u>

I hereby certify that on July 22, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/EFT System.

Mumtaz Alvi, Esq.
Alvi & Alliance
230 Park Avenue, Suite 1000
New York, New York 10169

Danforth Newcomb, Esq.
Brian H. Polovoy, Esq.
Terence P. Gilroy, Esq.
Shearmen & Sterling LLP
599 Lexington Avenue
New York, New York 10022-6069


_____/s/ Frederick A. Lovejoy_____
FREDERICK A. LOVEJOY