**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                              :

TAHIR HAMID,                           :
                                              :
               Petitioner,         :   No. 11 Civ. 00920 (LAP)
                                       :
          -v-                       :
                                       :

HABIB BANK LIMITED and         :
NATIONAL BANK OF PAKISTAN,  :
                                       :
              Respondents.      :
-------------------------------------------------------------x

**SUR-REPLY MEMORANDUM OF LAW OF RESPONDENT HABIB BANK LIMITED**
**IN FURTHER RESPONSE TO ORDER TO SHOW CAUSE DATED APRIL 28, 2011**

 

Danforth Newcomb
Brian H. Polovoy
Terence P. Gilroy
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022-6069
Telephone: (212) 848-4000

*Counsel for Respondent Habib Bank Limited*

With leave of the Court (dkt. no. 44), respondent Habib Bank Limited ("HBL") respectfully submits this sur-reply memorandum of law in further response to the Court's April 28, 2011 order to show cause. This memorandum responds to certain points raised in the reply filed by petitioner Tahir Hamid ("Hamid") on July 22, 2011. (Dkt. Nos. 42-43.)

## PRELIMINARY STATEMENT

HBL is a foreign bank with a New York branch. It is a stakeholder and has no interest other than minimizing costs and avoiding multiple claims on the same asset. There are two issues left in this case: (1) whether Hamid has standing to enforce a judgment in favor of Shaheen Sports, Inc. ("Shaheen") and Tajmahal Sports Company ("Tajmahal"), and (2) whether, assuming he does, the "separate entity" rule still acts to bar the requested relief, or whether that rule was overturned *sub silentio* by the New York Court of Appeals' decision in *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009). HBL takes no position on the issue of standing. HBL vigorously disputes, however, Hamid's argument that the separate entity rule no longer acts to bar a turnover proceeding such as this. As discussed below, Hamid's reply brief relies on a decision vacated by the Second Circuit and contains a particularly misleading discussion of the law. This is an important issue to HBL and the banking industry generally, and Hamid's new arguments and factual assertions are meritless.

## ARGUMENT

### I.   THE COURT SHOULD DENY HAMID'S MOTION FOR ENTRY OF A DEFAULT JUDGMENT

Hamid appears to have abandoned his request that the Court enter a default judgment. Indeed, Hamid's reply brief does not mention the words "default judgment" or mention the factors that govern a motion for a default judgment (or a motion to set aside entry of a default): "[1] whether the default was willful, [2] whether setting it aside [or declining to enter

it] would prejudice the adversary, [and 3] whether a meritorious defense is presented."

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994).

Three new assertions by Hamid warrant a brief response.  We do not like having to burden the Court with factual disputes such as these.  We address them only to make clear that HBL – a stakeholder with no interest in the dispute between Hamid and Asia Insurance – did not willfully default in this matter.

(1)  Hamid incorrectly states (at p. 10) that HBL has "failed to respond to the Subpoena and Disclosure (sic) Notice served with the Petition on February 28, 2008 (sic)."  In fact, HBL's prior counsel served a response to the Subpoena and Restraining Notice on March 18, 2011, and undersigned counsel served supplemental responses and objections on June 24, 2011.  (Dkt. No. 37, Affidavit of Terence P. Gilroy, sworn to June 24, 2011 ("Gilroy Aff.") Exs. G & P.)

(2)  We were not aware of the Clerk's Certificate noting the default of HBL.  The default was not (and still has not been) entered on the docket, and the Certificate was not served on HBL or its counsel or appended to Hamid's application for a default judgment (as required by Local Rule 55.2(b)).  Indeed, the Certificate could not have been appended to that application as the Certificate is dated a week *after* Hamid's application for entry of a default judgment.

(3)  There is a factual dispute as to whether Hamid's counsel contacted HBL's counsel prior to seeking a default judgment:  HBL's prior counsel submitted an affirmation stating that he did not hear from Hamid's counsel, while Hamid's counsel states in his brief that he left a voicemail for HBL's counsel.  (*Compare* Dkt. No. 16 ¶ 5 *with* Dkt. No. 42 at 8.)  There is also a factual dispute as to whether Hamid's counsel sent HBL itself the pre-trial conference notice or a copy of his April 19, 2011 letter to Judge Cote (which does not indicate any "cc's" on

its face):  HBL has no record of receiving either, while Hamid's counsel now says in his brief

that he mailed a copy of both to HBL.  What remains undisputed, however, is that even after

HBL's counsel specifically requested that Hamid's counsel send him all correspondence (Gilroy

Aff. Ex. G), Hamid's counsel chose not to do so.  And neither HBL nor its counsel was aware

that Hamid would be seeking a default judgment.

Based on the factors set out in *Commercial Bank of Kuwait*, *supra*, there is no

basis for the entry of a default judgment.

## II.    THE COURT SHOULD DENY HAMID'S MOTION FOR ENTRY OF AN ORDER GRANTING HAMID'S PETITION AND PROVIDING OTHER RELIEF

Hamid's motion also sought an order (1) directing HBL to "comply" with

Hamid's Subpoena; (2) directing HBL to "comply" with Hamid's restraining notice; and (3)

granting Hamid's petition on the merits and directing the turnover of assets.

As to the first two requests, our response noted (at 13) that these are moot because

HBL had since served formal responses and objections to the Subpoena (Gilroy Aff. Ex. P), and

Judge Cote had since issued an order directing HBL to restrain certain property (*id.* Ex. M).

Hamid's brief does not mention mootness, but appears to acknowledge that HBL has responded

to his discovery requests by noting that he now "intends to request leave of Court to file a

Motion to Compel Habib Bank Limited's disclosure."  (Dkt. No. 42 at 10 n.2.)  While we think a

motion to compel would be meritless, the substance of HBL's objections is not at issue here.

Our point is simply that Hamid's request in *this* motion is moot because HBL has responded and

objected to all of Hamid's discovery requests.

As to Hamid's remaining request – granting his petition on the merits and

directing the turnover of assets – we explained that it was premature to consider the petition on

the merits before addressing two threshold issues:  whether Hamid had properly served the

judgment debtor, and whether Hamid had standing to seek to enforce a judgment that was

entered in favor of someone else.  (Dkt. No. 36 at 13-15.)  And we explained that, in any event,

the separate entity rule mandated dismissal of the Petition.

        A.       <u>Service On The Judgment Debtor Is No Longer An Issue</u>

        As to the service point, Hamid's reply creates a dispute where there is none.  We

did not, as Hamid claims, "assert[] that the judgment debtor was not served properly" (Dkt. No.

42 at 5); we said there was no "evidence in the record that Hamid timely served the judgment

debtor."  (Dkt. No. 36 at 14.)  We raised this issue because it is jurisdictional (*id.*), and Hamid's

attorney had not responded to two written requests that he tell us whether he had served a copy

of Hamid's Petition on the judgment debtor.  (*Id.* at 15 n.4; Gilroy Aff. Ex. R.)  Hamid's reply

submission demonstrates that he did, in fact, mail the Petition to the judgment debtor.  Thus,

there is no issue.  Had Hamid's counsel simply replied when we asked if he had served the

judgment debtor, we (and he) would not have had to brief the point.

        B.       <u>HBL Takes No Position On Hamid's Standing</u>

        The other threshold issue – whether Hamid has standing to enforce someone

else's judgment – is not as clear cut, but HBL, as a mere stakeholder, takes no position on the

issue.  This Court entered judgment in favor of Shaheen and Tajmahal.  Hamid claims that he is

the "successor in interest" to Shaheen and the assignee of the judgment, but neither he nor his

attorney can locate the purported assignment.  (Dkt. No. 42 at 6-7.)  HBL is a bank faced with

lawsuits in two countries concerning the same assets, and it simply cannot stipulate that Hamid is

the party in interest here on the basis of his *ipse dixit* or his counsel's correspondence.  But, as

we explained in our August 1 letter (dkt. no. 44), because the separate entity rule mandates

dismissal of the Petition regardless of who the Petitioner is, HBL accepts the Court's

determination, following its review of Hamid's evidence, as to whether Hamid, Shaheen (or someone else) is the holder of the judgment at issue.

   C.  The "Separate Entity" Rule Mandates Dismissal Of The Petition

   Hamid's reply brief offers a particularly misleading discussion of the law on the "separate entity" rule and relies on a decision that was vacated by the Second Circuit.

   Under settled law, the "separate entity" rule provides that "'each branch of a bank is treated as a separate entity . . . in no way concerned with accounts maintained by depositors in other branches or at a home office.'"  *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558, 560 (S.D.N.Y. 2003) (quoting *Lok Prakashan Ltd. v. India Abroad Publ'ns, Inc.*, No. 00 Civ. 5862 (LAP), 2002 WL 1585820 (S.D.N.Y. July 16, 2002)).  Your Honor was crystal clear and correct in *Lok Prakashan*:  "New York law follows the 'separate entity rule' for purposes of attachment and execution."  2002 WL 1585820 at *2. Hamid's reply does not mention, much less distinguish Your Honor's decision in *Lok Prakashan*, Judge Rakoff's decision in *Motorola Credit*, or numerous other cases we discussed, except to state that they pre-dated *Koehler*.  (Dkt. No. 36 at 15-23.)

   Having made that distinction, Hamid's reply makes no sensible argument in response to the three decisions that applied the separate entity rule in a post-judgment garnishment case after *Koehler* (which are discussed in our response at 19-21):  As to the two New York state court decisions, *Samsun* and *Parbulk*, Hamid writes, "Tahir Hamid believes that those cases were not decided correctly and/or were based substantially on other issues."  (Dkt. No. 42 at 15.)  As to the decision of this Court in *Levin*, Hamid ignores it completely.  Hamid's discussion of *Parbulk* is all of one sentence:  "Likewise, Tahir Hamid believes that the Court in *Parbulk* [] was incorrect in its ruling, relying on other issues other [sic] than the separate entity

rule." (*Id.*)  We are at a loss as to how anyone could conclude that *Parbulk* rested on "issues other than the separate entity rule," as that was the sole basis for its holding and its determination that *Koehler* did not address or implicate the separate entity rule.  *See Parbulk* at 3-4.  (Gilroy Aff. Ex. S.)  Hamid's attempt to distinguish *Samsun* is equally unpersuasive.  Put simply, the legal issue here and in *Samsun* is the same regardless of whether a judgment was originally issued in this Court or was issued in another court and registered in this Court as a foreign judgment, and the nationality of the petitioner is equally irrelevant.  (Indeed, Hamid's counsel appears to forget that his client Tajmahal, one of the two judgment creditors, is a Pakistani company.)

In support of his argument that *Koehler* overturned the separate entity rule *sub silentio*, Hamid relies on two decisions, *Eitzen Bulk A/S. v. State Bank of India*, No. 09 Civ. 10118 (AKH) (S.D.N.Y. Aug. 3, 2010) and *JW Oilfield Equip., LLC v. Commerzbank AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011).  (Dkt. No. 42 at 11-12.)  Hamid cannot rely on *Eitzen Bulk* because the Second Circuit recently vacated Judge Hellerstein's order.  *See Eitzen Bulk A/S v. State Bank of India*, No. 10-3352-cv (2d Cir. May 12, 2011) (because the appeal was moot, "the district court's order, directing [State Bank of India] to engage in turnover litigation with respect to a maritime contract dispute, is vacated").  Because it was vacated, the order has no precedential value.  In any event, as discussed in our response brief (at 22), the New York courts have explicitly declined to follow *Eitzen Bulk*.[1]

---

[1]    Putting aside that the order was vacated, Hamid misquotes it.  *Eitzen Bulk* did not say, "the Court of Appeals of New York has recently rejected the position that *Habib Bank Limited* now asserts."  Hamid Reply Br. at 12 (purporting to quote *Eitzen Bulk*) (emphasis added).  The order said that the Court of Appeals had rejected the position *State Bank of India* asserted; it did not mention HBL.  We do not suggest that Hamid purposely failed to point out that *Eitzen Bulk* was vacated.  The order was not available on Westlaw and, indeed, we had not located it before filing our opening response.

Hamid's discussion of *Commerzbank* (at 11-12) similarly ignores the arguments in our response.  As an initial matter, Hamid's reply does not mention, much less dispute, that the New York courts have explicitly rejected *Commerzbank*.  *See Parbulk*.  (Gilroy Aff. Ex. S.)  Instead, Hamid selectively quotes from *Commerzbank* to mask the fact that Judge Castel's prediction as to how New York courts would view the separate entity rule post-*Koehler* was understandably influenced by Commerzbank's apparent decision not to contest that point.  Judge Castel actually wrote "*Koehler indicates that* New York courts will not apply the separate entity rule in post-judgment execution proceedings . . . *Indeed, Commerzbank recognizes that Koehler effectively preempts application of the separate entity rule here.*"  764 F. Supp. 2d at 595 (italicized words omitted in the quote in Hamid's brief).  *Samsun* and *Parbulk, supra,* make clear that New York courts subsequently determined that *Koehler* did not affect the separate entity rule.

HBL's response also noted that *Commerzbank* is in any event distinguishable because, unlike in *Commerzbank*, Hamid had made no allegation that Asia Insurance, if it were in New York, possessed the right to direct HBL to pay over the money it holds on deposit in Pakistan to an account in New York, and HBL had submitted evidence that it could rightfully refuse to make such a payment under Pakistani law.  (Dkt. No. 36 at 22-23 and Dkt. No. 38.)  Hamid's reply is to state in his brief that the Pakistani law is a "smokescreen" that "is routinely not enforced" (Dkt. No. 42 at 17) and to attach a statement from a Pakistani lawyer who states that entities "routinely obtain exemptions . . . from the State Bank of Pakistan allowing for the transfer of funds out of Pakistan for the purpose of conducting business and meeting obligations."  (Dkt. No. 42 Ex. 3.)  Notably, the Pakistani attorney – who does not identify a single exemption and does not say the law is not enforced – does not cite to the Foreign

Exchange Manual of the State Bank of Pakistan (which identifies exemptions to the Foreign Exchange Regulation Act 1947 (www.sbp.org.pk)), and does not in any way suggest one of those exemptions would be applicable to the facts in this case, or that Asia Insurance has in fact obtained such an exemption.  The Pakistani attorney (unlike Hamid's brief) also does not mention, much less contest, the conclusion of HBL's Chief Legal Counsel that Asia Insurance could not direct HBL to pay over money that Asia Insurance holds on deposit in its name in Pakistan to an account in New York.  (Dkt. No. 38.)  Thus, even under *Commerzbank*, Hamid's Petition fails.

Other than *Commerzbank*, the (vacated) order in *Eitzen Bulk*, and his strained interpretation of *Koehler* (for which we refer the Court to our response at 17-18), Hamid's brief rests on a new and misleading argument that a limited exception to the separate entity rule applies here.  (Dkt. No. 42 at 13-14, citing *Digitrex, Inc. v. Johnson*, 491 F. Supp. 66 (S.D.N.Y. 1980) and *S&S Mach. Corp. v. Mfrs. Hanover Trust Co.*, 638 N.Y.S.2d 953 (1st Dep't 1996).)  Under settled law, the "*Digitrex* exception to the separate entity rule is ***only*** applicable where: (1) the restraining notice is served on the bank's main office; (2) the bank's main office and branches are within the same jurisdiction; ***and*** (3) the bank branches are connected to the main office by high-speed computers and are under the centralized control of the main office."  *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242, at *4 (S.D.N.Y. Sept. 15, 2009) (citing cases; emphasis added).  As *Wiley* makes clear, numerous cases have recognized this limitation on *Digitrex*.  *Id.*  Thus, because the Petition for a turnover order was served on HBL's New York branch; Pakistan and New York are not in the same jurisdiction; and there is no factual allegation of a centralized computer system, the separate entity rule applies – even when the New York branch and the foreign branch are the same legal entity.  *See Fid. Partners,*

*Inc. v. Philippine Export and Foreign Loan Guar. Corp.*, 921 F. Supp. 1113, 1120 (S.D.N.Y. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Advanced Emp't Concepts, Inc.,* 703 N.Y.S.2d 3, 4 (1st Dep't 2000).

Hamid does not mention or dispute Judge Rakoff's statement that "it is not for this Court to limit the separate entity doctrine beyond the limits already set by the courts of New York." *Motorola*, 288 F. Supp. 2d at 561. Nor does he mention the First Department's explicit refusal to extend *Digitrex* beyond its narrow facts in the absence of "a pronouncement from the Court of Appeals or an act of the Legislature." *Nat'l Union*, 703 N.Y.S.2d at 4. Last, he does not mention or dispute the substantial policy arguments in favor of maintaining the separate entity rule in its current form (which we touch on at pages 24-26 of our opposition, and which have been examined in detail by *amici* who have submitted filings in the New York state court cases where this issue has arisen post-*Koehler*). Policy reasons, comity, and conflicts of law counsel special caution where, as here, the bank branch with the assets is in another nation, with its own banking and criminal laws.

Tajmahal (a Pakistani company) and Shaheen chose to sue Asia Insurance (a Pakistani company) in New York instead of Pakistan. While Tajmahal and Shaheen have a judgment that may be enforced, that judgment may only be enforced in this jurisdiction consistent with New York law. And under settled law and for good policy reasons, New York law does not allow enforcement in these circumstances.[2]

---

[2]    We are unsure of Hamid's counsel's purpose in maligning the Pakistani legal system. (Dkt. No. 42 at 18-19.) Calling another nation's legal system "notoriously corrupt" and saying it "moves at a snail's pace" is unnecessary and not well taken, especially where Pakistan has been recognized previously as an adequate alternative forum by US courts. It is also peculiar that Hamid cites to the 13 year old affidavit of a non-lawyer employee of Tajmahal (which makes sporting goods) as evidence of how long it would have taken the Pakistani courts to adjudicate this case. (Dkt. No. 42 at 19).

## CONCLUSION

For the foregoing reasons and those stated in HBL's opening response (dkt. nos. 36-38), Hamid's motion should be denied, and his Petition should be dismissed.

Dated: New York, NY
      August 7, 2011

Respectfully submitted,

SHEARMAN & STERLING LLP

By:   /s/ Brian H. Polovoy    
      Danforth Newcomb
      Brian H. Polovoy
      Terence P. Gilroy

599 Lexington Avenue
New York, NY  10022-6069
Telephone: (212) 848-4000

*Counsel for Respondent Habib Bank Limited*